[This decision has been published in *Ohio Official Reports* at 95 Ohio St.3d 149.]

CITY OF CANTON ET AL., APPELLANTS, *v*. THE STATE OF OHIO ET AL., APPELLEES.

[Cite as *Canton v. State,* 2002-Ohio-2005.]

*Municipal corporations—Home rule—Requirements for statute to constitute a general law for purposes of home-rule analysis—Federal manufactured home construction and safety standards—Application of zoning laws— R.C. 3781.184(C) and (D) unconstitutional for violating Home-Rule Amendment, Section 3, Article XVIII, Ohio Constitution.*

(No. 2000-2130—Submitted November 13, 2001—Decided May 8, 2002.)

APPEAL from the Court of Appeals for Stark County, No. 2000CA0076.

————————————

SYLLABUS OF THE COURT

To constitute a general law for purposes of home-rule analysis, a statute must (1) be part of a statewide and comprehensive legislative enactment, (2) apply to all parts of the state alike and operate uniformly throughout the state, (3) set forth police, sanitary, or similar regulations, rather than purport only to grant or limit legislative power of a municipal corporation to set forth police, sanitary, or similar regulations, and (4) prescribe a rule of conduct upon citizens generally.

————————————

LUNDBERG STRATTON, J.

{¶1} For many years, the city of Canton has prohibited the placement or use of mobile homes as principal or accessory structures for residential use. Canton Codified Ordinances 1129.11. On March 16, 1998, the city of Canton amended its code to include "manufactured homes" within the definition of "mobile homes." Ordinance No. 49/98, amending Canton Codified Ordinances 1123.57(b). As a

result, manufactured homes became prohibited within the city limits as principal or accessory structures for residential use.

{¶2} In 1998, the Ohio General Assembly enacted R.C. 3781.184, as part of Am.Sub.S.B. No. 142, relating to manufactured homes. 147 Ohio Laws, Part IV, 7986 (effective March 30, 1999). Subsections (A) and (B) relate to federal construction and safety standards. Subsection (C) of the statute forbids political subdivisions from prohibiting or restricting the location of permanently sited manufactured homes in any zone or district in which a single-family home is permitted. Subsection (D) operates as an exception to subsection (C) and permits private landowners to incorporate restrictive covenants in deeds to prohibit the inclusion of, among other things, manufactured homes.

{¶3} On March 29, 1999, the city of Canton filed an action in the Stark County Common Pleas Court, seeking a declaration that R.C. 3781.184 was an unconstitutional infringement of municipal home-rule powers of the city of Canton under Section 3, Article XVIII of the Ohio Constitution, the uniformity requirements of Section 26, Article II of the Ohio Constitution, and the equal protection and due process requirements of both the Ohio and United States Constitutions.

{¶4} The trial court ruled on cross-motions for summary judgment, granting Canton's motion and denying the state's motion, and finding that R.C. 3781.184, in its entirety, violated Section 3, Article XVIII of the Ohio Constitution (the "Home-Rule Amendment") in that it was an improper attempt to limit the home-rule powers of the city. The state appealed, and the Stark County Court of Appeals, in a split decision, reversed the trial court's judgment.

{¶5} The cause is now before this court upon the allowance of a discretionary appeal.

**{¶6}** As a threshold matter, we note that although the trial and appellate courts referred to R.C. 3781.184 in its entirety, only (C) and (D) are challenged in this court.

**{¶7}** Municipalities derive their powers of self-government directly from Section 3, Article XVIII of the Ohio Constitution, which provides:

**{¶8}** "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." See, also, *W. Jefferson v. Robinson* (1965), 1 Ohio St.2d 113, 30 O.O.2d 474, 205 N.E.2d 382, paragraph one of the syllabus.

**{¶9}** The court of appeals correctly set forth the three-part test to determine whether a provision of a state statute takes precedence over a municipal ordinance. A state statute takes precedence over a local ordinance when (1) the ordinance is in conflict with the statute, (2) the ordinance is an exercise of the police power, rather than of local self-government, and (3) the statute is a general law. See *Ohio Assn. of Private Detective Agencies, Inc. v. N. Olmsted* (1992), 65 Ohio St.3d 242, 244-245, 602 N.E.2d 1147, citing *Auxter v. Toledo* (1962), 173 Ohio St. 444, 20 O.O.2d 71, 183 N.E.2d 920.

**{¶10}** The parties in this matter acknowledge that the first two prongs of the three-part test are met, i.e.*,* that the statute and the ordinance are in conflict, and that the ordinance is an exercise of police power rather than local self-government. Therefore, the only issue before this court is whether R.C. 3781.184(C) and (D) are general laws. If R.C. 3781.184(C) and (D) are general laws, they take precedence over the city of Canton's zoning ordinance in this conflict. If, however, R.C. 3781.184(C) and (D) are not general laws, then they are an unconstitutional attempt to limit the legislative home-rule powers of the city of Canton.

**{¶11}** Because we hold that R.C. 3781.184(C) and (D) are not general laws, we conclude that they violate the Home-Rule Amendment, Section 3, Article

XVIII, Ohio Constitution and, as such, must be struck down as unconstitutional. Accordingly, for the reasons that follow, we reverse the judgment of the court of appeals.

{¶12} The court of appeals noted that this court has not set forth a bright-line test for determining whether a law is a general law. However, we have enunciated some steadfast parameters in making this determination.

{¶13} In 1929, we held that general laws are enacted by the General Assembly "to safeguard the peace, health, morals, and safety, and to protect the property of the people of the state." *Schneiderman v. Sesanstein* (1929), 121 Ohio St. 80, 82-83, 167 N.E. 158. Moreover, general laws "apply to all parts of the state alike." Id. at 83, 167 N.E. 158. In *Schneiderman*, this court held that a statute setting speed limits throughout Ohio was a general law.

{¶14} In a landmark home-rule case in 1965, this court considered a municipal ordinance prohibiting uninvited solicitation of orders for the sale of goods in private homes and a state statute that barred municipalities from enacting such ordinances. See *W. Jefferson v. Robinson*, 1 Ohio St.2d 113, 30 O.O.2d 474, 205 N.E.2d 382. We held that the statutes in question, R.C. 715.63 and 715.64, which prohibited municipal corporations from requiring licenses to sell certain products, purport only to grant and to limit legislative power of municipal corporations to adopt or enforce police regulations. We concluded that, as such, the statutes were not "general" laws.

{¶15} As a rule of law, we held that "[t]he words 'general laws' as set forth in Section 3 of Article XVIII of the Ohio Constitution means [sic] statutes setting forth police, sanitary or similar regulations and not statutes which purport only to grant or to limit the legislative powers of a municipal corporation to adopt or enforce police, sanitary or other similar regulations." Id., paragraph three of the syllabus.

{¶16} In *Garcia v. Siffrin Residential Assn.* (1980), 63 Ohio St.2d 259, 17 O.O.3d 167, 407 N.E.2d 1369, this court considered whether a state statute regulating licensing of residential facilities for mentally retarded individuals was a general law. In concluding that it was not, we repeated the *W. Jefferson* definition and added that "[t]hese 'general laws' are laws operating uniformly throughout the state, * * * which prescribe a rule of conduct upon citizens generally, and which operate with general uniform application throughout the state under the same circumstances and conditions." Id., 63 Ohio St.2d at 271, 17 O.O.3d 167, 407 N.E.2d 1369.

{¶17} Then, in *Clermont Environmental Reclamation Co. v. Wiederhold* (1982), 2 Ohio St.3d 44, 2 OBR 587, 442 N.E.2d 1278, this court began to examine statutes in pari materia with other sections of the same chapter rather than in isolation to determine whether they were general laws. Id. at 48, 2 OBR 587, 442 N.E.2d 1278. We held that a statute that was a part of a comprehensive statutory scheme to regulate the state's control of the disposal of hazardous wastes was a general law. Id. at paragraphs one and two of the syllabus.

{¶18} In *Ohio Assn. of Private Detective Agencies,* 65 Ohio St.3d 242, 602 N.E.2d 1147, the court struck down an ordinance attempting to exact a fee for the registration or licensure of private investigators because it conflicted with a statewide regulatory program, R.C. Chapter 4749. Id. at syllabus. The statutes contained in that chapter were held to be general laws because they provided for statewide uniformity in the regulation of private investigators. In settling the question of generality, the court continued to view statutory schemes in their entirety, rather than a single statute in isolation, and continued to determine whether the statutes promoted "statewide uniformity." Id. at 244-245, 602 N.E.2d 1147.

{¶19} Finally, in *Linndale v. State* (1999), 85 Ohio St.3d 52, 706 N.E.2d 1227, this court summarized the above definitions of "general law" and looked to whether the statute in question was part of a system of uniform statewide regulation

on the subject matter, and whether the legislative enactment prescribed a rule of conduct upon citizens generally. Id. at 54-55, 706 N.E.2d 1227. The statute in *Linndale*, R.C. 4549.17, prohibits local law enforcement officers from issuing speeding and excess weight citations on interstate freeways where, among other things, less than a certain length of freeway is within the jurisdiction of the local government in question. We held that the statute was not part of a system of uniform statewide regulation on the subject of traffic law enforcement, nor did it impose a rule of conduct on citizens generally. As such, it was not a general law, and it was required to yield to the municipal ordinance.

{¶20} Against this backdrop of definitions, the court of appeals held that in construing R.C. 3781.184 in its entirety, the statute "is an attempt to provide statewide uniformity of the definition of a manufactured home, and to recognize housing which complies with certain standards as a single-family residence, whether constructed on site or off site." Further, the court held that the statute "does not serve merely to limit the zoning power of political subdivisions, but serves to clarify the definition of a permanently sited manufactured home, and to require compliance with safety standards." Thus, the court of appeals held that R.C. 3781.184 is a general law of statewide application, allowing it to prevail over the zoning ordinance of the city of Canton.

{¶21} We disagree with the judgment of the court of appeals and hold that to constitute a general law for purposes of home-rule analysis, a statute must (1) be part of a statewide and comprehensive legislative enactment, (2) apply to all parts of the state alike and operate uniformly throughout the state, (3) set forth police, sanitary, or similar regulations, rather than purport only to grant or limit legislative power of a municipal corporation to set forth police, sanitary, or similar regulations, and (4) prescribe a rule of conduct upon citizens generally. Because R.C. 3781.184(C) and (D) fail to meet all of these conditions, we hold that they are not

general laws, and, as such, they must yield to the municipal zoning ordinance in question.

Statewide and Comprehensive Legislative Enactment

{¶22} The court in *Clermont,* 2 Ohio St.3d 44, 2 OBR 587, 442 N.E.2d 1278, and *Ohio Assn. of Private Detective Agencies*, 65 Ohio St.3d 242, 602 N.E.2d 1147, considered whether the respective statutes at issue in those cases were part of a statewide and comprehensive legislative scheme. In *Clermont*, the court answered in the affirmative because the statute was part of a statewide comprehensive enactment concerning disposal of hazardous waste throughout the state. Id., paragraphs one and two of the syllabus. Similarly, in *Ohio Assn. of Private Detective Agencies*, we held that a statute regulating the registration and licensing of private investigators was part of a comprehensive statewide legislative scheme. *Private Detective Agencies*, syllabus.

{¶23} In contrast, R.C. 3781.184(C) and (D) are not part of a statewide and comprehensive zoning plan. R.C. Chapter 3781 relates to building standards but varies widely in its content from adopting rules for licenses for group homes (R.C. 3781.183), fire systems in tall buildings (3781.108), deadbolt locks on swing exit doors in apartment buildings (3781.103), to rules for restroom facilities (3781.109) and thermal efficiency standards (3781.21). Further, Sub.S.B. No. 142 relates to tax consequences for manufactured homes and other topics, and is not a part of a statewide comprehensive legislative enactment regarding zoning.

{¶24} Moreover, the state does not have a statewide zoning scheme, nor does the state have a comprehensive plan or scheme for the licensing, regulation, or registration of manufactured homes. Instead, R.C. 3781.184(A) and (B) simply refer to the current federal standards regulating the construction of manufactured homes. A United States district court has held that "[t]he [Federal Manufactured Home Construction and Safety Standards Act of 1974, Section 5403, Title 42, U.S.Code] preempts only *construction and safety standards* and does not apply to

local zoning ordinances that purport to regulate the placement of certain types of dwellings in the community."  The court held that the codes at issue (Canton Ordinances 1123.57 and 1129.11) are zoning ordinances not aimed at construction and safety standards.  "Because Congress intended to regulate safety and construction only, local laws aimed at purposes outside that area are not preempted by the Act.  There is no indication that Congress intended to regulate any other aspect of the manufactured home industry."  See *Ohio Manufactured Hous. Assn. v. Canton* (Dec. 4, 1998), N.D. Ohio No. 5:97 CV 1190.  Accordingly, we conclude that R.C. 3781.184(C) and (D) do not provide for uniform, statewide regulation of manufactured housing.

Uniform Operation Throughout the State

{¶25} In *Schneiderman*, we held that general laws must "apply to all parts of the state alike."  Id., 121 Ohio St. at 83, 167 N.E. 158.  Moreover, the *Garcia* court set forth a similar requirement that general laws are "laws operating uniformly throughout the state."  Id., 63 Ohio St.2d at 271, 17 O.O.3d 167, 407 N.E.2d 1369.

{¶26} Although the state maintains that the goal of the statute is to foster more affordable housing across the state, the statute contains an exception that wholly defeats the stated purpose.  R.C. 3781.184(D) provides:

{¶27} "This section does not prohibit a private landowner from incorporating a restrictive covenant in a deed, prohibiting the inclusion on the conveyed land of manufactured homes."

{¶28} A "restrictive covenant" is a "private agreement, usu. in a deed or lease, that restricts the use or occupancy of real property, esp. by specifying lot sizes, building lines, architectural styles, and the uses to which the property may be put."  Black's Law Dictionary (7th Ed.Rev.1999) 371.  This exception provides suburban portions of the state with newer housing developments the opportunity to opt out of R.C. 3781.184 by incorporating restrictive covenants in their deeds.

{¶29} The state argues that the restrictive covenant language of R.C. 3781.184(D) neither creates nor destroys homeowner rights. Moreover, the state contends that on its face, the statute and its exception apply to the entire state of Ohio. Yet, the practical effect of the legislation and common sense tell us that enterprising developers can use deed restrictions to prohibit placement of manufactured homes in developments due to aesthetics, neighborhood character, and home valuation concerns, whether real or imagined.

{¶30} "The requirement of uniform operation throughout the state of laws of a general nature does not forbid different treatment of various classes or types of citizens, but does prohibit nonuniform classification if such be arbitrary, unreasonable or capricious." *Garcia*, 63 Ohio St.2d at 272, 17 O.O.3d 167, 407 N.E.2d 1369, citing *Miller v. Korns* (1923), 107 Ohio St. 287, 140 N.E. 773. Because of the exception contained in R.C. 3781.184(D), R.C. 3781.184(C) will have very little, if any, impact in areas of development having effective deed restrictions or active homeowner associations. Instead, the statute will effectively apply only in older areas of the state, i.e., cities where residential areas no longer have effective deed restrictions or no longer have active homeowner associations. Because we find that R.C. 3781.184(D) permits that which the statute prohibits, we find that it is inconsistent with the statute's stated purpose, i.e., to encourage placement of affordable manufactured housing units across the state. Thus, we hold that R.C. 3781.184(C) and (D) do not have uniform application to all citizens of the state, and as such are not general laws.

Police, Sanitary, or Similar Regulation

{¶31} In *W. Jefferson v. Robinson*, 1 Ohio St.2d 113, 30 O.O.2d 474, 205 N.E.2d 382, we held that "[t]he words 'general laws' as set forth in Section 3 of Article XVIII of the Ohio Constitution means [*sic*] statutes setting forth police, sanitary or similar regulations and not statutes which purport only to grant or to

limit the legislative powers of a municipal corporation to adopt or enforce police, sanitary or other similar regulations." *Id.* at paragraph three of the syllabus.

**{¶32}** We later clarified that "[t]he meaning of this syllabus principle of law is that a statute which prohibits the exercise by a municipality of its home rule powers without such statute serving an overriding statewide interest would directly contravene the constitutional grant of municipal power." *Clermont*, 2 Ohio St.3d at 48, 2 OBR 587, 442 N.E.2d 1278.

**{¶33}** In this case, R.C. 3781.184(C), on its face, appears to serve an overriding state interest in providing more affordable housing options across the state. However, again, the exception contained in R.C. 3781.184(D) defeats this purpose. Thus, R.C. 3781.184(C) does not set forth police, sanitary or similar regulations; rather, it purports only to grant or limit the legislative power of a municipal corporation to set forth police, sanitary, or similar regulations.

Prescribing a Rule of Conduct on Citizens Generally

**{¶34}** In *Youngstown v. Evans* (1929), 121 Ohio St. 342, 168 N.E. 844, this court considered an ordinance prohibiting transportation of intoxicating beverages that provided different penalties than a state statute for the same offense. We held that the statute in question was "not a general law in the sense of prescribing a rule of conduct upon citizens generally. It is a limitation upon law making by municipal legislative bodies." *Id.* at 345, 168 N.E. 844.

**{¶35}** Later, in *W. Jefferson*, we reiterated the standard set forth in *Youngstown.* See *W. Jefferson*, 1 Ohio St.2d at 117, 30 O.O.2d 474, 205 N.E.2d at 382. This court again affirmed the requirement in *Garcia*, 63 Ohio St.2d at 271, 17 O.O.3d 167, 407 N.E.2d 1369, and most recently in *Linndale*, 85 Ohio St.3d at 55, 706 N.E.2d 1227, where we held that the statute in question, prohibiting local law enforcement officers from certain localities issuing speeding and excess weight citations on interstate freeways did not prescribe a rule of conduct upon citizens generally.

**{¶36}** Similarly, in this case, we hold that R.C. 3781.184(C) does not prescribe a rule of conduct upon citizens generally, because just as in *Youngstown* and *Linndale*, the statute applies to municipal legislative bodies, not to citizens generally.

Conclusion

**{¶37}** Accordingly, because R.C. 3781.184(C) and (D) are not part of a system of uniform statewide regulation on the subject of manufactured housing, do not operate uniformly throughout the state, only purport to limit legislative power of a municipal corporation to enact police, sanitary, or similar regulations, and fail to prescribe a rule of conduct upon citizens generally, we hold that they are not general laws.

**{¶38}** We have noted in the past that statutes regulating matters such as speed limits and hazardous waste facilities are regulations "for the protection of the lives of the people of the whole state" and have "no special relation to any of the political subdivisions of the state." *Schneiderman*, 121 Ohio St. at 84, 167 N.E. 158 (speed limits), quoting *Froelich v. Cleveland* (1919), 99 Ohio St. 376, 386, 124 N.E. 212; *Clermont*, 2 Ohio St.3d 44, 2 OBR 587, 442 N.E.2d 1278 (hazardous waste facility). Thus, those statutes were deemed to be "general laws." In contrast, this statute, which attempts to limit the ability of political subdivisions to zone their communities as they see fit, strikes at the heart of municipal home rule: the orderly planning of a city.

**{¶39}** Therefore, as an attempt to limit the powers of a municipal corporation to adopt or to enforce police regulations, R.C. 3781.184(C) and (D) violate Section 3, Article XVIII of the Ohio Constitution, and, as such, must be struck down. Because we have decided that R.C. 3781.184(C) and (D) violate Section 3, Article XVIII of the Ohio Constitution, we need not address whether the subsections also violate the Uniformity Clause (Section 26, Article II), or the Equal Protection and Due Process Clauses of the Ohio and United States Constitutions.

See *Linndale*, 85 Ohio St.3d at 53, 706 N.E.2d 1227. Moreover, we note that R.C. 1.50 provides that if any provision of any section of the Revised Code is held invalid, the invalidity does not affect other portions of the statute that can be given effect without the invalid provisions. Accordingly, we hold that R.C. 3781.184(C) and (D) are severed out and R.C. 3781.184(A) and (B) remain viable.

**{¶40}** Accordingly, we reverse the judgment of the court of appeals and reinstate the judgment of the trial court as to (C) and (D).

Judgment reversed.

MOYER, C.J., DOUGLAS, RESNICK and F.E. SWEENEY, JJ., concur.

COOK, J., concurs separately.

PFEIFER, J., dissents.

———————————

**COOK, J., concurring.**

**{¶41}** I concur with the judgment to reverse the court of appeals. Canton Codified Ordinance 1129.11 may be enforced because those divisions of R.C. 3781.184 that conflict with it are not "general laws" as the term is used in the Home-Rule Amendment to the Ohio Constitution. Section 3, Article XVIII, Ohio Constitution.

———————————

**PFEIFER, J., dissenting.**

**{¶42}** The majority opinion concludes that R.C. 3781.184 violates the Home-Rule Amendment, Section 3, Article XVIII of the Ohio Constitution, because it is not a general law. The majority concludes that R.C. 3781.184 fails all four of the elements of a new test that it sets forth in syllabus law. I dissent from the syllabus law because it pulls together disparate tests that ought to remain independent of each other and from the judgment because of the strained application to the facts. I will address each of the majority's elements separately.

Statewide and Comprehensive Legislative Enactment

**{¶43}** The majority appears to state that R.C. Chapter 3781 isn't comprehensive because it addresses building standards for various types of buildings and facilities. The majority clearly states that "R.C. 3781.184(A) and (B) simply refer to the current federal standards regulating the construction of manufactured homes." R.C. 3781.184(A) does more than merely refer to federal standards. It states, "Every manufactured home * * * shall be constructed in accordance with the federal construction and safety standards," and "[t]he federal standards shall be the exclusive construction and safety standards in this state and neither the state nor any political subdivision of the state may establish any other standard governing the construction of manufactured homes." R.C. 3781.184(A) is a clear statement by the General Assembly that it is adopting the federal standards to the exclusion of any standards set forth by political subdivisions.

**{¶44}** According to the majority, the standards cover only construction and safety, not zoning, and therefore "do not provide for uniform, statewide regulation of manufactured housing." However, the General Assembly's intention that the statute be uniform and apply statewide is manifested by its decision to deny political subdivisions the ability to establish standards of their own. Further, the General Assembly did not ignore zoning, as the federal standards do, because it stated in R.C. 3781.184(C) that manufactured homes must be permitted in "any district or zone in which a political subdivision permits single-family homes." R.C. 3781.184 is as comprehensive as it can or need be. See *State v. Sammons* (1979), 58 Ohio St.2d, 460, 464, 12 O.O.3d 384, 391 N.E.2d 713, citing *United States Civ. Serv. Comm. v. Natl. Assn. of Letter Carriers* (1973), 413 U.S. 548, 578-579, 93 S.Ct. 2880, 37 L.Ed.2d 796 (there are limitations in the English language with respect to being both specific and manageably brief).

Uniform Operation Throughout the State

**{¶45}** The majority concludes that R.C. 3781.184 is not uniformly operative throughout the state because private landowners can incorporate covenants into

their deeds that restrict the use of manufactured homes. The General Assembly decided that private landowners could still use covenants in deeds to restrict the usage of manufactured homes. R.C. 3781.184(D). That decision does not mean that R.C. 3781.184 is not uniformly operative.

{¶46} Laws are uniform when they apply to all similarly situated people; they need not apply to every single person in every circumstance no matter what. Our tax laws treat taxpayers differently depending on whether they are married or have children and depending on whether they are businesses or individuals or nonprofit organizations. The tax laws do not violate the uniformity requirement based on these distinctions because all similarly situated taxpayers are treated the same. R.C. 3781.184 applies to all political subdivisions in the state. Individuals are not similarly situated. Therefore, R.C. 3781.184 is as uniform as it can or need be.

Police, Sanitary, or Similar Regulation

{¶47} The majority concludes that the statewide interest of "providing more affordable housing options across the state" is defeated because people can incorporate restrictive covenants into their deeds. Deeds can restrict the use of manufactured homes, and some people will undoubtedly use deeds of that sort. This does not defeat the purpose of the statute. Even if half of all deeds contained restrictive covenants, and they won't, the remaining property would still be available for manufactured homes and would increase affordable housing options. The General Assembly's stated purpose is a valid exercise of its legislative power.

14

Prescribing a Rule of Conduct on Citizens Generally

{¶48} The General Assembly has enacted laws that govern streets and public grounds, R.C. Chapter 723; assessments, R.C. Chapter 727; and the powers of municipal officers, R.C. Chapter 733; these apply only to municipalities and political subdivisions. According to the syllabus, these laws and the vast bulk of R.C. Title 7 violate the Home-Rule Amendment. It is hard to imagine that the majority really wants to incorporate the vast sweep of this element of the syllabus law into our legal system.

{¶49} In an attempt to increase the stock of affordable housing in the state, the General Assembly enacted a regulatory scheme, R.C. 3781.184. The General Assembly was not bent on trammeling the Home-Rule Amendment, and R.C. 3781.184 does no such thing. R.C. 3781.184 is a general law because it comprehensively addresses the safety, construction, and zoning of manufactured homes, because it applies uniformly across the state, because it serves an overriding statewide interest, and because it applies to all similarly situated entities. I dissent from the majority opinion and conclude that R.C. 3781.184 is a general law and does not violate the Home-Rule Amendment, Section 3, Article XVIII of the Ohio Constitution.

_____

Joseph Martuccio, Canton Law Director, Craig E. Chessler and Robert G. Rubin, Assistant Law Directors, for appellants.

Betty D. Montgomery, Attorney General, Michael R. Gladman and Elizabeth Luper Schuster, Assistant Attorneys General, for appellees.

Barry M. Byron, Stephen L. Byron and John Gotherman, urging reversal for amicus curiae, Ohio Municipal League.

_____