DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Plaintiffs-Appellants John and Nada Marich have appealed the decision of the Summit County Court of Common Pleas denying them partial summary judgment and granting partial summary judgment to Defendants-Appellees Bob Bennett Construction Company ("Bob Bennett") and John Goss ("Goss"). This Court reverses.
 I {¶ 2} Appellants filed a complaint based in negligence against Bob Bennett and Goss (collectively "Appellees") on May 13, 2004. The complaint alleged that John Marich was injured on November 8, 2002 as a result of the negligence of Goss, who was operating a tractor trailer on behalf of Bob Bennett. The complaint further alleged Nada Marich suffered a loss of consortium due to the accident.
 {¶ 3} On April 14, 2005, Appellants filed a partial motion for summary judgment on the theory that Appellees were negligent as a matter of law for operating an oversized vehicle upon the public roads without an appropriate permit. On July 28, 2005, the trial court filed a judgment entry which granted Appellants' partial motion for summary judgment on the issue of whether Appellees were negligent per se. The trial court reserved the issue of causation and damages for the jury.
 {¶ 4} On August 8, 2005, Appellees filed a motion for reconsideration. On August 29, 2005, the trial court denied Appellees' motion for reconsideration. However, on September 16, 2005, the court vacated its order denying reconsideration and scheduled a hearing on the motion for October 13, 2005. On October 31, 2005, the trial court granted Appellees' motion for reconsideration, effectively finding that Appellees were not negligent per se for operating the oversized vehicle on a public road.
 {¶ 5} The matter proceeded to trial on November 28, 2005. On December 1, 2005, the jury returned a verdict in favor of Appellees, finding no negligence occurred. On December 1, 2005, the trial court journalized the jury verdict.
 {¶ 6} Appellants have timely appealed, asserting one assignment of error.
 II Assignment of Error Number One
"THE TRIAL COURT ERRED BY FAILING TO GRANT SUMMARY JUDGMENT ON THE ISSUE OF NEGLIGENCE TO JOHN AND NADA MARICH."
 {¶ 7} In their sole assignment of error, Appellants have argued that the trial court erred by failing to grant them summary judgment on the issue of negligence. Specifically, Appellants have argued that by operating an oversized vehicle on the public roads without a permit, Appellees violated R.C.5577.05 and thus, were negligent per se. We agree.
 {¶ 8} Appellate courts consider an appeal from summary judgment under a de novo standard of review, which requires an independent review of the trial court's decision. Grafton v.Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Thus, this Court applies the same standard as the trial court, viewing the facts of the case in a light most favorable to the non-moving party. Civ.R. 56(C); Norris v. Ohio Std. Oil Co. (1982),70 Ohio St.2d 1, 2.
 {¶ 9} Summary judgment is proper under Civ.R. 56 when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can only reach one conclusion, and that conclusion is adverse to the non-moving party. Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327.
 {¶ 10} To prevail on a motion for summary judgment, the moving party must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. Civ.R. 56(E) provides that after the moving party has satisfied its burden of supporting its motion for summary judgment, the non-moving party may overcome summary judgment by demonstrating that a genuine issue exists to be litigated for trial. State ex rel. Zimmermanv. Tompkins (1996), 75 Ohio St.3d 447, 449.
 {¶ 11} The Ohio Revised Code prohibits hauling a load with a width greater than 102 inches on public roads. R.C. 5577.05
states in pertinent part:
"No vehicle shall be operated upon the public highways, streets, bridges, and culverts within the state, whose dimensions exceed those specified in this section.
"(A) No such vehicle shall have a width in excess of:
* * *
(5) One hundred two inches, including load, for all other vehicles, except that the director may prohibit the operation of one hundred two-inch vehicles on such state highways or portions thereof as the director designates." Id.[1]
 {¶ 12} The overarching mandate of R.C. 5577.05 precludes the operation of oversized vehicles on all public roads, whether under the jurisdiction of the state or the municipality. However, R.C. 4513.34 provides for permits to be issued authorizing the operation of oversized vehicles and grants that authority to the governmental entity with jurisdiction over the road.
"The director of transportation with respect to all highways that are a part of the state highway system and local authorities with respect to highways under their jurisdiction, upon application in writing and for good cause shown, may issue a special permit in writing authorizing the applicant to operate or move a vehicle or combination of vehicles of a size or weight of vehicle or load exceeding the maximum specified in sections5577.01 to 5577.09 of the Revised Code[.]" R.C. 4513.34(A).
 {¶ 13} R.C. 4513.34(B) allows one permit for operation of oversized vehicles on roads sharing jurisdiction. Further, R.C.4513.34(C) grants the director or local authority the autonomy to create the application for a permit in any fashion. R.C.4513.34(D) grants the director or local authority the power to "issue or withhold a permit." R.C. 4513.34(E) mandates that the permit be carried in the vehicle and open to inspection. R.C.4513.34(F) and (G) detail when and how the director may debar an applicant from applying for a special permit. It is clear that the legislature intended to create an exemption to the overarching preclusion of R.C. 5577.05 by means of a permit system.
 {¶ 14} The record indicates that the load being hauled by Goss, on behalf of Bob Bennett, consisted of a bulldozer which was 124 inches wide. Thus, it is clear that such a load violated R.C. 5577.05(A)(5). It is undisputed that Bob Bennett did not acquire a permit from the city of Norton prior to hauling the bulldozer to Clark Mill Road.
 {¶ 15} Appellees successfully argued before the trial court they did not need a permit to operate an oversized vehicle on Clark Mill Road pursuant to a Norton city ordinance. Norton Ordinance 440.01(c)(1) states in pertinent part:
"(1) No person shall operate a vehicle exceeding a size as specified in Section 440.02,[2] or exceeding a gross weight of five tons, upon any street or highway in the Municipality other than the following streets and highways:
"* * *
"Clark Mill Road[.]"
 {¶ 16} The record indicates that the Norton city official responsible for issuing oversized hauling permits testified that Ordinance 440.01(c)(1) acted as a blanket exemption to the statutory prescription against operating oversized vehicles on city streets. He further testified that he would not issue a permit for Clark Mill Road even if he received an application, based solely on Ordinance 440.01(c)(1).
 {¶ 17} However, this Court is not persuaded that Norton had the legislative authority to exempt roads within its jurisdiction. Subsections (C) and (D) of R.C. 4513.34 are most illustrative of this point. These sections grant local authorities latitude to issue or withhold a permit. They do not give them the authority to enact a blanket exception eliminating the need for a permit entirely. The distinction is clear to this Court. Norton did not withhold a permit from Bob Bennett as it was authorized to do under state statute. The city was simply not in the habit of issuing them because of Ordinance 440.01(C)(1).
 {¶ 18} While "[m]unicipalities in Ohio are authorized to adopt local police, sanitary, and other similar regulations by virtue of the Home Rule Amendment to the Ohio Constitution * * * and are not subject to limitations of the General Assembly," they may not enact ordinances which conflict with the general laws of the state.[3] Akron v. Meyer, 9th Dist. No. 21882,2004-Ohio-4457, at ¶ 11, citing Struthers v. Sokol (1923),108 Ohio St. 263, at paragraph one of the syllabus. This Court has held that an "ordinance is in conflict with general laws if it `permits or licenses that which the statute forbids and prohibits, and vice versa.'" Meyer at ¶ 11, quoting FondessyEnterprises, Inc. v. Oregon (1986), 23 Ohio St.3d 213, 217. We find that Ordinance 440.01(c)(1) conflicted with R.C. 5577.05 by allowing oversized vehicles to operate on certain city streets within Norton without a city issued permit when the statutory scheme clearly required one.
 {¶ 19} In Canton v. State, 95 Ohio St.3d 149,2002-Ohio-2005, the Ohio Supreme Court addressed preemption of a local ordinance by a state statute. The Court reiterated the three part test to determine whether a state statute preempts a municipal Ordinance. "A state statute takes precedence over a local ordinance when (1) the ordinance is in conflict with the statute, (2) the ordinance is an exercise of the police power, rather than of local self-government, and (3) the statute is a general law." Id. at ¶ 9.
 {¶ 20} First, we have already determined that Ordinance 440.01 conflicts with R.C. 5577.05. Second, we conclude that Ordinance 440.01(c)(1) is an exercise of the police power. While the police power has never been clearly defined, it is generally regarded to be related to the public health, safety, morals, or general welfare. See Portage Cty. Bd. of Commrs. v. Akron,109 Ohio St.3d 106, 2006-Ohio-954, at ¶ 104. The First District Court of Appeals has defined the police power as the as the "power to guard the public morals, safety, and health, and to promote the public convenience and the common good." (Quotations omitted).Automatic Refreshment Serv., Inc. v. Cincinnati (1993),92 Ohio App.3d 284, 288. Further, the regulation of traffic has been deemed to be an exercise of the police power. Williamson v.Pavlovich (1989), 45 Ohio St.3d 179, 184. Clearly, Ordinance 440.01 is a traffic regulation that bears a relation to public safety and convenience, the general welfare, and is therefore an exercise of the police power.
 {¶ 21} Finally, we will address whether R.C. 5577.05 is a general law. The Ohio Supreme Court has defined general laws as those enacted "to safeguard the peace, health, morals, and safety, and to protect the property of the people of the state."Schneiderman v. Sesanstein (1929), 121 Ohio St. 80, 82-83. Recently, the Court adopted a comprehensive four part test to determine whether a statute is a general law. To constitute a general law for the purposes of the Home Rule Amendment, a statute must: "(1) be part of a statewide and comprehensive legislative enactment, (2) apply to all parts of the state alike and operate uniformly throughout the state, (3) set forth police, sanitary, or similar regulations, and (4) prescribe a rule of conduct upon citizens generally." Canton at ¶ 21. We conclude that R.C. 5577.05 is a general law.
 {¶ 22} First, R.C. 5577.05 is statewide and comprehensive legislation. The statute bans oversized vehicles on all public roads in Ohio. The statute is part of Chapter 5577 which is a comprehensive scheme prescribing weight, size and load requirements to ensure safety on Ohio's public roads. Second, R.C. 5577.05 applies to all parts of the state equally and operates uniformly throughout the state. Once again, R.C. 5577.05
proscribes the operation of any oversized vehicle on any public road in Ohio. Accordingly, we conclude that the first element of the Canton test is satisfied.
 {¶ 23} Appellees have argued that R.C. 4513.34 creates a lack of uniformity throughout the state because each individual municipality may decide if, how, and when it allows oversized vehicles to travel on the public roads in its jurisdiction by issuing or withholding a permit. We disagree.
 {¶ 24} R.C. 4513.34 simply requires a permit to be issued in order to operate an oversized vehicle on any road in Ohio. The legislative scheme implemented by R.C. 5577.05 and R.C. 4513.34
is uniform. The general law remains the same in every municipality in every county in Ohio: No person may drive an oversized vehicle on any public road in Ohio without a permit issued by the state or local municipality. Just because an individual municipality is granted some autonomy in issuing or denying a permit does not mean the general law does not operate uniformly throughout the state.
 {¶ 25} For instance, such autonomy in the permit issuing process does not mean that a municipality may eliminate the need for a permit entirely. If the law were genuinely not uniform, then R.C. 4513.34 would grant each municipality the authority to determine whether it required a permit to operate an oversized vehicle within its jurisdiction. Such is not the case here. In the present matter, the statute clearly mandates that the only way one may operate an oversized vehicle in exemption of R.C.5577.05, is to obtain a permit from the city or state.
 {¶ 26} Therefore we find that R.C. 5577.05 applies equally and operates uniformly throughout the state and that it is simply the issuing or withholding of permits that may vary from municipality to municipality. Accordingly, we conclude that the second element of the Canton test is satisfied.
 {¶ 27} Third, R.C. 5577.05 sets forth a police regulation. As discussed supra, a regulation is an exercise of the police power when it promotes public health, safety, morals, or general welfare. R.C. 5577.05 is part of a legislative scheme to regulate the width, length, and loads of vehicles to promote safety on the public roads. Additionally, regulating the size of vehicles on the roads of Ohio promotes the general welfare. Accordingly, we conclude that the third element of the Canton test is satisfied.
 {¶ 28} Fourth, it is clear to us that R.C. 5577.05 prescribes a rule of conduct upon the citizens of Ohio generally. R.C.5577.05 clearly mandates that no one shall operate any oversized vehicle on the public roads. The statute does not include or exclude any particular type of citizen or any particular county or municipality. Further, R.C. 4513.34 equally prescribes that in order to exempt oneself from the mandate of R.C. 5577.05, one must obtain a permit. This statute also prescribes a rule of conduct. Simply, no citizen may drive an oversized vehicle on any public road in Ohio, at any time, without first obtaining a permit. Such a rule clearly prescribes conduct and accordingly, we conclude that the fourth element of the Canton test is satisfied.
 {¶ 29} In conclusion, we find that R.C. 5577.05 is a general law and therefore preempts the conflicting local ordinance, Ordinance 440.01. As a result, Appellees were in violation of R.C. 5577.05 and were negligent per se as a matter of law. SeeShroades v. Rental Homes (1981), 68 Ohio St.2d 20, 25.[4]
Negligence per se requires the violation of a statute which sets forth a specific course of conduct designed to protect the safety of others by one whose duty it is to obey the statute. See Bergev. Columbus Comm. Cable Access (1999), 136 Ohio App.3d 281,312-313. We find all of these elements present in the matter sub judice. Accordingly, the trial court erred when it entered summary judgment in favor of Appellees on the issue of negligence per se.
 {¶ 30} While we understand the seemingly inequitable nature of this decision, appellate courts are not courts of equity and we are thereby constrained to apply the law regardless of the impact upon either party.
 {¶ 31} Appellants' sole assignment of error has merit.
 III {¶ 32} Appellants' sole assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is reversed and the cause remanded for proceedings consistent with this opinion.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee.
Moore, J. Concurs.
[1] This Court will use the 2002 version of the statutes in effect at the time of the accident.
[2] Section 440.02 parallels R.C. 5577.05 and includes the ban on vehicles with a width in excess of 102 inches including load.
[3] Section 3, Article XVIII of the Ohio Constitution states: "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."
[4] We note that negligence per se is not liability per se. SeeSikora v. Wenzel (2000), 88 Ohio St.3d 493, 496. A plaintiff is still required to prove causation and damages. Id.