[Cite as *Toledo v. State*, 2022-Ohio-1192.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

City of Toledo

    Appellant/Cross-appellee

v.

State of Ohio

    Appellee/Cross-appellant

Court of Appeals No.  L-21-1031
L-21-1032

Trial Court No.  CI0201802922

**DECISION AND JUDGMENT**

Decided:  April 8, 2022

* * * * *

Dale R. Emch, Law Director, John T. Madigan, Senior Attorney,
and Jeffrey B. Charles, Chief of Litigation, for appellant/cross/appellee.

Dave Yost, Ohio Attorney General, Caitlyn Nestleroth Johnson, Iris Jin,
and Garrett M. Anderson, Assistant Attorneys General, for appellee/cross-
appellant.

* * * * *

**ZMUDA, J.**

## I.      Introduction

{¶ 1} Appellant/cross-appellee, the city of Toledo, appeals the judgment of the

Lucas County Court of Common Pleas, finding a motion for summary judgment filed by

appellee/cross-appellant, the state of Ohio, well-taken, in part.  Because we find that the

trial court erred by failing to address certain arguments raised by the parties below on

mootness grounds, we reverse and remand this matter to the trial court with instructions to consider those arguments.

## A. Facts and Procedural Background

{¶ 2} This is the latest in a line of appeals arising out of the state's attempt to regulate municipalities' use of automated traffic law photo-monitoring devices to come before this court.[1] On June 28, 2018, the city filed its complaint in the present action, seeking a declaratory judgment that Am.Sub.H.B. No. 64, the state's biennial budget bill ("H.B. 64"), violates Article XVIII, Section 3, of the Ohio Constitution (the "home rule provision"), and requesting injunctive relief preventing the enforcement of the same.

{¶ 3} While the matter was pending before the trial court, the General Assembly passed the state's two-year transportation budget bill, 2019 Am.Sub.H.B. No. 62 ("H.B. 62"). Among other things, H.B. 62 requires a law enforcement officer to be present at every photo enforcement device location at all times during operation, reduces or eliminates the state's funding to local authorities that utilize photo enforcement programs, confers "exclusive jurisdiction" over actions involving challenges to citations issued pursuant to a photo enforcement program to municipal and county courts, and requires local authorities to provide advance and non-recoverable court deposits to cover "all applicable court costs and fees" for civil actions related to the photo enforcement programs.

---

[1] For a summary of the underlying facts, see our decision in *City of Toledo v. State*, 72 N.E.3d 692, 2017-Ohio-215 (6th Dist.).

2.

**{¶ 4}** In response to the enactment of H.B. 62, the city amended its complaint on May 24, 2019. In its amended complaint, the city alleged that H.B. 62 was unconstitutional under the home rule provision of the Ohio Constitution, and sought the same declaratory and injunctive relief concerning H.B. 62 as it requested in its original complaint concerning H.B. 64.

**{¶ 5}** Two weeks after the city filed its amended complaint, the state filed a motion to dismiss, in which it argued that the city's claims challenging the constitutionality of H.B. 62 were without merit because "[t]he Ohio Constitution vests the General Assembly with the authority to pass legislation specifying how state money is spent and to regulate lower courts. The Home Rule Amendment does not vest cities with the ability to veto duly enacted state laws because of how they may impact cities."

**{¶ 6}** Before the trial court ruled on its motion to dismiss, the state filed an answer to the city's amended complaint on December 11, 2019, and then filed a motion for summary judgment on January 31, 2020. In its motion for summary judgment, the state argued that the city's constitutional challenge to the contested provisions of H.B. 64 (referred to by the state as the "2015 Set-Off Law") was moot because those provisions were repealed and replaced by the enactment of H.B. 62.

**{¶ 7}** Moreover, the state argued that the contested provisions in H.B. 62 (referred to by the state as the "Reporting and Jurisdiction Law") were constitutional based upon the General Assembly's constitutional "power to regulate lower courts and to decide how state money is spent." The state recognized the power conferred upon cities by the home

3.

rule provision of the Ohio Constitution, but insisted that such power was limited and must yield to state exercise of legislative authority granted to the General Assembly by the Ohio Constitution, including the General Assembly's express authority to regulate lower courts and spend state money. Finally, the state contended that, to the extent the home rule provision is implicated in this case, the statutes enacted pursuant to H.B. 62 do not contravene the home rule provision.

{¶ 8} On February 13, 2020, the city filed its memorandum in opposition to the state's motion for summary judgment. The city advanced several arguments as to why the contested provisions in H.B. 62 violate the Ohio Constitution. The city argued that the provisions violate the home rule provision for the same reasons that substantively similar portions of S.B. 342 were deemed unconstitutional by the Ohio Supreme Court in *Dayton v. State*, 151 Ohio St.3d 168, 2017-Ohio-6909, 87 N.E.3d 176. The city additionally argued that the contested provisions of H.B. 62 were unconstitutional because they (1) impose unconstitutional conditions that seek to accomplish what the state has previously been enjoined from doing by several courts, (2) violate the separation of powers doctrine, (3) violate the one-subject rule, (4) violate Section 26, Article II of the Ohio Constitution (the uniformity clause), (5) run afoul of the retroactivity clause of the Ohio Constitution, (6) are void for vagueness, (7) violate the Modern Courts Amendment to the Ohio Constitution by prescribing procedural rules to be followed by Ohio's municipal courts, and (8) violate the Equal Protection Clause of the Ohio Constitution.

4.

{¶ 9} The state filed its reply to the city's memorandum on February 19, 2020. In its reply, the state insisted that the contested provisions of H.B. 62 were distinguishable from the statutes promulgated under S.B. 342 and H.B. 64 that were previously struck down. The state argued that the city's arguments based upon the home rule provision fail because the city relied upon cases "resolving the constitutionality of other dissimilar traffic-camera laws."

{¶ 10} Additionally, the state urged that the city's unconstitutional conditions argument failed because "there is no such thing as an unconstitutional conditions doctrine claim in Ohio law." Pointing to the Ohio Supreme Court's decision in *City of Toledo, supra,* 154 Ohio St.3d 41, 2018-Ohio-2358, 110 N.E.3d 1257, the state argued that the city's separation of powers argument must fail. The state further insisted that the contested provisions of H.B. 62 did not violate the one-subject rule and applied uniformly throughout the state. Moreover, the state argued that the city's retroactivity claim must be dismissed under the Ohio Supreme Court's decision in *Toledo Cty. Sch. Dist. Bd. of Edn. v. State Bd. of Edn.*, 146 Ohio St.3d 356, 2016-Ohio-2806, 56 N.E.3d 950, holding that the Retroactivity Clause of the Ohio Constitution does not protect political subdivisions. Similarly, the state argued that political subdivisions like the city may not advance a void for vagueness claim against the state. Alternatively, the state insisted that the contest provisions of H.B. 62 are not vague. Finally, the state argued that the city's remaining claims concerning the Modern Courts Amendment and equal protection should

5.

be rejected since they were not raised in the city's complaint and otherwise failed on the merits.

{¶ 11} While the state's motion for summary judgment was pending before the trial court, on June 24, 2020, the Ohio Supreme Court issued its decision in *State ex rel. Magsig v. City of Toledo*, 160 Ohio St.3d 342, 2020-Ohio-3416, 156 N.E.3d 899. In that decision, the Ohio Supreme Court examined R.C. 1901.20(A)(1), a statute enacted as part of H.B. 62 that confers exclusive jurisdiction in the municipal courts to adjudicate every alleged noncriminal traffic-law violation. The court applied the statute and held that the city has no jurisdiction to conduct an administrative hearing to adjudicate liability for violating a municipal traffic ordinance. *Id.* at ¶ 20.

{¶ 12} Three months after *Magsig* was released, the city filed a supplemental memorandum in opposition to the state motion for summary judgment, in which it conceded that municipal courts have exclusive jurisdiction over civil traffic violations. The city informed the trial court that it had "suspended its photo enforcement traffic program, including the program's administrative hearings, in light of the recent Ohio Supreme Court ruling in [*Magsig*]." However, the city noted that it "intends to reactivate its photo enforcement program and provide for the filing of all citation appeals in the Toledo Municipal Court."

{¶ 13} Upon review of the foregoing arguments, the trial court issued its decision on the state's motion to dismiss and motion for summary judgment on January 22, 2021. In its decision, the trial court found that the city's claims regarding H.B. 64 were moot

6.

because the laws enacted pursuant to H.B. 64 were repealed by H.B. 62. Consequently, the trial court found the state's motion for summary judgment well-taken as to the city's claims regarding H.B. 64.

{¶ 14} The trial court then examined the arguments pertaining to H.B. 62, noting that the contested provisions of H.B. 62 fall into two categories: (1) statutes addressing jurisdictional matters and procedures for the implementation of the traffic camera enforcement program, including R.C. 1901.20(A)(1), 1907.02(C), 4511.093(B)(1), 4511.096(C), and 4511.099(A); and (2) statutes establishing funding set-off procedures to be followed by the tax commissioner, including R.C. 5747.502(C), (D), and (F), which the city argued were in violation of the home rule provision.

{¶ 15} As to the first group of statutes, the trial court began its analysis by noting the city's representation that it had suspended its photo enforcement traffic program. Based upon this representation, the trial court found that the jurisdictional and procedural statutes embodied in R.C. 1901.20(A)(1), 1907.02(C), 4511.093(B)(1), 4511.096(C), and 4511.099(A), "no longer apply to the city, and declaring them unconstitutional would not have a 'direct and immediate impact' on the city." Thus, the trial court found that the city's claims regarding these statutes were no longer justiciable and granted the state summary judgment as to the city's claims challenging the constitutionality of these statutes.

{¶ 16} Turning to the statutes related to funding set-off procedures, the trial court found that such statutes are not general laws and are in conflict with the city's photo

7.

traffic enforcement program. Consequently, the trial court concluded that these statutes impermissibly limited the city's home rule authority and ran afoul of the home rule provision of the Ohio Constitution. The court then determined that the remaining constitutional arguments raised by the city were moot, granted summary judgment to the city,[2] and permanently enjoined the state from enforcing R.C. 5747.502(C), (D), and (F).

{¶ 17} In response to the trial court's decision, both parties filed timely notices of appeal. The city filed its notice on February 18, 2021 in case No. L-21-1031, and the state filed its notice four days later in case No. L-21-1032. On June 1, 2021, we issued an order consolidating these cases under case No. L-21-1031.

## B. Assignments of Error

{¶ 18} On appeal, the city assigns the following errors for our review:

Assignment of Error No. 1: The trial court erred when it held that the Plaintiff-Appellant's claims related to Ohio Revised Code Sections 4511.093(B)(1), 4511.093(B)(3), 4511.096(C), and 4511.099(A) were no longer justiciable due to the fact that the City had temporarily suspended operation of its photo enforcement program.

---

[2] In its decision, the trial court stated the following with respect to its decision to grant summary judgment to the city sua sponte: "Although the city has not requested summary judgment, the courts finds that the parties have fully briefed the relevant issues, all relevant evidence is before the court, there are no genuine issues of material facts, and the city is entitled to judgment as a matter of law."

8.

Assignment of Error No. 2: The trial court erred when it failed to rule that Ohio Revised Code Sections 4511.093(B)(1), 4511.093(B)(3), 4511.095, 4511.096(C), 4511.097, 4511.098, and 4511.099(A) were unconstitutional violations of Article XVIII, Section 3 of the Ohio Constitution, the Home Rule Amendment.

Assignment of Error No. 3: The trial court erred when it failed to rule that Ohio Revised Code Sections 4511.096(C), 4511.097, 4511.098, and 4511.099(A) were unconstitutional violations of Article IV, Section 5(B) of the Ohio Constitution, the Modern Courts Amendment.

{¶ 19} Additionally, the state assigns the following errors for our review:

The State's Assignment of Error No. 1: The trial court erred in holding that the Home Rule Amendment applies to state laws governing the distribution and use of state money.

The State's Assignment of Error No. 2: Assuming *arguendo* that the Home Rule Amendment applies, the trial court erred in holding that state laws governing the distribution and use of state money serve only to limit municipal authority without serving an overriding state interest and, therefore, do not satisfy the third prong of the general-law test set forth in *Canton v. State*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963.

The State's Assignment of Error No. 3: Assuming *arguendo* that the Home Rule Amendment applies, the trial court erred in holding that state

9.

laws that establish generally applicable rules for the distribution and use of state money do not prescribe rules of conduct for citizens generally and, therefore, do not satisfy the fourth prong of the general-law test set forth in *Canton v. State*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963.

The State's Assignment of Error No. 4: Assuming *arguendo* that the Home Rule Amendment applies, the trial court erred in finding that state laws governing the distribution and use of state money violate the Home Rule Amendment when the challenging municipality failed to show a conflict between the state laws and its ordinance because the existence of a conflict is an essential element of a home-rule claim.

{¶ 20} We agree with the city's argument under its first assignment of error, namely that the trial court erred when it refused to consider the city's claims related to R.C. 4511.093(B)(1), 4511.093(B)(3), 4511.096(C), and 4511.099(A) based upon its conclusion that those claims were no longer justiciable. Our resolution of the city's first assignment of error requires us to remand this matter to the trial court for its consideration of the city's claims related to R.C. 4511.093(B)(1), 4511.093(B)(3), 4511.096(C), and 4511.099(A). In order to avoid piecemeal consideration of the parties' interrelated arguments, we will refrain from addressing the remaining issues raised by the parties in this appeal. Consequently, we will begin and end our analysis with the city's first assignment of error.

10.

## II. Analysis

{¶ 21} In the city's first assignment of error, it argues that the trial court erred when it found its request for declaratory and injunctive relief should be dismissed with respect to R.C. 4511.093(B)(1), 4511.093(B)(3), 4511.096(C), and 4511.099(A), because there was no longer a justiciable controversy involving those statutes in light of the city's temporary suspension of its photo enforcement program.

{¶ 22} Ordinarily, this court reviews a trial court's order on a motion for summary judgment de novo. *Talmadge Crossings, LLC v. Andersons, Inc.*, 2022-Ohio-645, ---N.E.3d ----, ¶ 9 (6th Dist.). However, when a declaratory judgment is dismissed because it does not present a justiciable issue, we review that determination for an abuse of discretion. *M.C. v. Choudhry*, 9th Dist. Summit Nos. 29859, 29866, 2022-Ohio-915, ¶ 27, citing *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586, ¶ 11-13.

{¶ 23} "The three essential elements for declaratory relief are that (1) a real controversy exists between the parties, (2) the controversy is justiciable in character, and (3) speedy relief is necessary to preserve the rights of the parties." *Wymsylo v. Bartec, Inc.*, 132 Ohio St.3d 167, 2012-Ohio-2187, 970 N.E.2d 898, ¶ 31, citing *Burger Brewing Co. v. Liquor Control Comm.*, 34 Ohio St.2d 93, 97, 296 N.E.2d 261 (1973). The trial court dismissed the city's claims after finding they were not justiciable. Thus, the second element is at issue in this case.

11.

{¶ 24} Article IV, Section 4(B) of the Ohio Constitution provides that "the courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters." The Ohio Supreme Court has explained that, "in order for a justiciable question to exist, '"[t]he danger or dilemma of the plaintiff must be present, not contingent on the happening of hypothetical future events * * * and the threat to his position must be actual and genuine and not merely possible or remote."'" *Mid-American Fire and Cas. Co. v. Heasley*, 113 Ohio St.3d 133, 2007-Ohio-1248, 863 N.E.2d 142, ¶ 9, quoting *League for Preservation of Civil Rights v. Cincinnati*, 64 Ohio App. 195, 197, 28 N.E.2d 660 (1st Dist.1940), quoting Borchard, Declaratory Judgments 40 (1934).

{¶ 25} Here, the trial court dismissed the city's claims pertaining R.C. 4511.093(B)(1) and (3), which requires the presence of an officer to issue a citation, R.C. 4511.096(C), which requires the local authority to file a certified copy of traffic citation with the municipal court, and R.C. 4511.099(A), which requires the local authority to provide an advance deposit to the municipal court when filing a certified copy of traffic citation. The trial court dismissed the city's claims because it found that these statutes no longer apply to the city in light of its temporary suspension of its photo enforcement traffic program. The trial court reasoned that declaring these statutes unconstitutional "would not have a 'direct and immediate impact' on the city," and therefore the claims arising out of those statutes were no longer justiciable. Upon our review, we find that the trial court abused its discretion in finding that the city's claims are not justiciable.

12.

{¶ 26} Contrary to the view espoused by the trial court, we find that the city's temporary suspension of its photo enforcement traffic program did not nullify the direct and immediate impact the challenged statutes have on the city. In representing to the trial court that it had temporarily suspended its program, the city was careful to note its determination to "reactivate its photo enforcement program and provide for the filing of all citation appeals in the Toledo Municipal Court." The suspension of the program was explicitly temporary in nature, and the city made it clear that the suspension was only to last until such a time that the city could modify the program to bring it into conformity with R.C. 1901.20(A)(1) and 1907.02(C), the statutes conferring exclusive jurisdiction to the Toledo Municipal Court over traffic citations issued under the city's program.

{¶ 27} The facts of this case, including its lengthy procedural history, manifest a clear resolve on the part of the city to continue operation of its photo enforcement traffic program. The state cannot reasonably dispute that the statutes in question presently threaten the city's ability to continue operating its program. At a minimum, the city's existing program would have to be modified further in order to comply with the officer presence requirement. Further, the economics of the program are impacted, perhaps severely, by the advance deposit requirements set forth in R.C. 4511.099(A).

{¶ 28} That the foregoing harms are dissolved by the city's suspension of the program, which is expressly temporary in nature, is illogical. Delaying the resolution of the city's constitutional challenge to the contested statutes immediately harms the city by forcing it to choose between preemptively modifying the program at a significant cost in

13.

terms of time and money, or moving forward with the program as is and risking the loss of a substantial amount of state funding in the event the contested statutes are deemed constitutional. The risk to the city is actual, genuine, and present, not remote or merely possible. The fact that the city has prudently taken steps to minimize its exposure to the financial ramifications of operating a photo enforcement traffic program under the present statutory scheme it seeks to challenge does not force the conclusion that its claims are no longer justiciable. *See Ohioans for Concealed Carry, Inc. v. Columbus*, 164 Ohio St.3d 291, 2020-Ohio-6724, 172 N.E.3d 935, ¶ 32, citing *Peoples Rights Org., Inc. v. Columbus*, 152 F.3d 522, 527 (6th Cir.1998) ("Certain impending injury is sufficient to obtain preventative relief; a plaintiff need not wait for an injury to actually occur.").

{¶ 29} In support of its argument to the contrary, the state cites a decision from the United States Court of Appeals for the Sixth Circuit that addressed the mootness doctrine in the federal context, *Hill v. Snyder*, 878 F.3d 193 (6th Cir.2017). In *Hill*, a group of juvenile criminal offenders sentenced to mandatory sentences of life without parole brought suit under 42 U.S.C. § 1983 against Michigan state officials, challenging the constitutionality of the statutory scheme that authorized their mandatory life sentences and barred them from parole eligibility. While the matter was pending, Michigan's legislature amended the challenged statutory scheme in such a way that the offenders were no longer subject to the mandatory life sentence. Finding that the amendment of the statutory scheme rendered the matter moot, the trial court granted the Michigan officials' motion to dismiss. The offenders then appealed to the Sixth Circuit.

14.

{¶ 30} At the outset of its mootness analysis, the Sixth Circuit stated: "Among the events that may moot a claim is the '[l]egislative repeal or amendment of a challenged statute,' which 'usually eliminates this requisite case-or-controversy.'" *Hill* at 203, quoting *Green Party of Tenn. v. Hargett*, 700 F.3d 816, 822 (6th Cir. 2012). The court explained that "[l]egislative action ordinarily moots a case midstream, when a challenged provision is repealed or amended during the pendency of the litigation." *Id.* at 204. Based upon that principle, the Sixth District upheld the trial court's dismissal of the offenders' action, and reaffirmed "the well-established legal principle that a claim premised on a statute that no longer applies to the challenging party does not satisfy Article III's case-or-controversy requirement." *Id.*

{¶ 31} Notably, the facts of *Hill* are fundamentally different than those presented in the case before this court. In *Hill*, the mooting event was the repeal of the *challenged* statute. If the General Assembly were to repeal the contested provisions of H.B. 62, we would find, consistent with the reasoning in *Hill*, that the city's claims are no longer justiciable. However, those are not the facts before us. In this case, the city temporarily suspended operation of its program that would have otherwise been in violation of the challenged statutes. Those statutes remain in effect today. Based upon this crucial distinction, we find *Hill* is inapplicable to this case, and the state's reliance upon it is misplaced.

{¶ 32} In sum, we find that the city's claims concerning R.C. 4511.093(B)(1) and (3), 4511.096(C), and R.C. 4511.099(A), are justiciable notwithstanding the city's

15.

temporary suspension of its photo enforcement traffic program. In holding otherwise, the trial court abused its discretion.

{¶ 33} Accordingly, we find the city's first assignment of error well-taken. This resolution requires us to remand this matter to the trial court for its consideration of the merits of the city's request for declaratory judgment and injunctive relief concerning R.C. 4511.093(B)(1) and (3), 4511.096(C), and R.C. 4511.099(A). Rather than addressing the rest of the assignments of error raised by the parties, which challenge the trial court's judgment as to the constitutionality of the remaining statutes challenged by the city in its amended complaint, we find it prudent to immediately remand this matter. This will avoid the piecemeal resolution of the parties' appellate arguments and allow us to consider the trial court's substantive ruling as to all of the contested provisions of H.B. 62 in one appeal, thereby serving the interests of judicial economy.[3] Consequently, we do not reach the merits of the remaining assignments of error.

### III.    Conclusion

{¶ 34} In light of the foregoing, we find that substantial justice has not been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is reversed. Because the trial court abused its discretion in dismissing, on justiciability

---

[3] The constitutionality of H.B. 62 under the Ohio Constitution's Home Rule Amendment is currently pending before the Ohio Supreme Court in *Village of Newburgh Hts. v. Ohio*, case No. 2021-0247. Oral argument was held in that appeal on February 9, 2022, and the matter is now decisional. The decision in *Newburgh Hts.* will likely address and resolve the arguments raised by the parties in this action.

16.

grounds, the city's request for declaratory judgment and injunctive relief concerning R.C. 4511.093(B)(1) and (3), 4511.096(C), and R.C. 4511.099(A), we remand this matter to the trial court for it to address those claims on the merits. The state is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed,
and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Thomas J. Osowik, J.

Gene A. Zmuda, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.