[Cite as *Lill v. Ohio State Univ.*, 2019-Ohio-276.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Nancy L. Lill, Ph.D., | : | |
| Plaintiff-Appellant, | : | |
| | | No. 17AP-733 |
| v. | : | (Ct. of Cl. No. 2015-00387) |
| The Ohio State University, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on January 29, 2019

**On Brief:** *The Gittes Law Group*, and *Jeffrey P. Vardaro*, for plaintiff-appellant. **Argued:** *Jeffrey P. Vardaro.*

**On Brief:** [*Dave Yost*], Attorney General, *Lee Ann Rabe* and *Emily S. Tapocsi,* for defendant-appellee. **Argued:** *Lee Ann Rabe.*

**On Brief:** *Marshall and Forman LLC*, *John S. Marshall*, and *Louis A. Jacobs*, for amici curiae.

APPEAL from the Court of Claims of Ohio

BRUNNER, J.

{¶ 1} Plaintiff-appellant, Nancy L. Lill, Ph.D., appeals an adverse judgment of the Court of Claims of Ohio entered on September 8, 2017. By judgment, it held that Lill is not entitled to any damages from defendant-appellee, The Ohio State University ("OSU"), as a result of OSU's termination of Lill's employment before affording her a valid tenure evaluation. The Court of Claims concluded this was a breach of contract case and that Lill had failed to present evidence she was entitled to benefits beyond those detailed in her employment contract. For the reasons that follow, we reverse and remand this matter for calculation of Lill's monetary damages for OSU's wrongful termination of her employment.

## I.  FACTS AND PROCEDURAL BACKGROUND

### A.  Overview

{¶ 2}   We acknowledge at the outset that liability is not at issue here.  After a three-day trial in June 2016, the Court of Claims found OSU had breached its employment contract with Lill by not affording her a fair, impartial tenure review as provided for in the contract.  The Court of Claims memorialized its decision in an interim order entered on July 12, 2016, and granted Lill equitable relief by sending back the matter to OSU for a new, fair, and impartial tenure evaluation. OSU subsequently conducted a proper evaluation of Lill's tenure qualifications, and on May 3, 2017, OSU informed Lill that she was denied tenure.  This appeal concerns only Lill's claim for monetary damages from OSU for terminating her employment on June 30, 2013, based on the defective tenure denial OSU had handed down in 2012, almost five years before the valid tenure review process was completed.

{¶ 3}   The central question Lill presents on appeal is whether a fair and impartial tenure review is a condition precedent to nonrenewal based on tenure denial, such that OSU must provide a faculty member continued employment and a new terminal year following the faculty member's successful appeal of an improper tenure review.

{¶ 4}   Lill argues that, because her new, fair, and impartial tenure review was not completed until May 3, 2017, OSU's termination of her employment on June 30, 2013 constituted an unlawful termination for which she is entitled to damages.  She seeks back pay, subject to mitigation for the job she later obtained, all from her 2013 termination date through the year of her first proper tenure denial (2016-2017), followed by front pay for the required terminal year following the negative decision (2017-2018).

{¶ 5}   OSU argues that this is not a wrongful termination case but a breach of contract case.  OSU submits that its contract with Lill promised her a maximum of five years employment: four probationary years and, in the event tenure was not granted at the end of the fourth year, one terminal year. OSU argues that because Lill was employed by OSU for five years, she should not receive any damages or, at most, damages for one additional year commensurate with her base salary.

### B.  Prior Proceedings

{¶ 6}   It is undisputed that Lill joined the OSU faculty in September 2008 as a tenure-track associate professor in OSU's Department of Pathology in the College of

Medicine. She was employed pursuant to a written contract, the terms of which were contained in her hiring letter, and she was placed on a four-year tenure track. Her appointment was probationary, with her tenure review process being governed by the University Faculty Rules ("the Rules") and Department of Pathology's Appointment Promotion & Tenure Document ("AP&T"), all of which the parties stipulated were incorporated into Lill's employment contract entered into by the parties on August 14, 2008.

{¶ 7} Lill began her tenure review process in the summer 2011. Her department chair, college dean, OSU's provost, OSU's president, and the OSU Board of Trustees recommended against tenure, and she received a notice of termination in June 2012, during her fourth probationary year, which started the clock running on her terminal year. She timely appealed her tenure denial to the Committee on Academic Freedom and Responsibility ("CAFR"), alleging numerous violations of her tenure review process. In September 2012, CAFR found grounds existed for asserting that Lill's tenure evaluation was improper and referred her appeal to the University Faculty Hearing Committee ("Hearing Committee"). The Hearing Committee agreed that Lill's tenure evaluation was flawed and granted her appeal. On April 8, 2013, the Hearing Committee reported to OSU's then-Executive Vice President of Academic Affair and Provost, Dr. Joseph Alutto, and to OSU's then-President, Dr. E. Gordon Gee, its findings that Lill's complaint alleging improper evaluation should be upheld. The Rules required Alutto as the provost to promptly "take such steps as may be deemed necessary to assure" that Lill received "a new, fair, and impartial evaluation." (June 6, 2016 Def.'s Trial Ex. I at Rules 3335-5-05(C)(6) and (7).)

{¶ 8} Alutto, however, disagreed with the Hearing Committee's findings of error and, on April 26, 2013, issued instead a decision denying Lill any further tenure review procedure and upholding the original tenure evaluation that the Hearing Committee had found improper. Acting on the June 2012 termination notice and based on the improper tenure review, OSU ended Lill's employment on June 30, 2013.

{¶ 9} The record before us indicates that Lill, following her June 30, 2013 termination, first secured new employment on December 3, 2014.

{¶ 10} In April 2015, Lill commenced the underlying action against OSU in the Court of Claims, alleging OSU had denied her a new, fair, and impartial evaluation of her

application for tenure, which resulted in "the wrongful and premature termination of [her] employment and the interruption of her ongoing cancer research." (Apr. 21, 2015 Compl. at 2.) Lill sought damages, along with declaratory and equitable relief, for breach of contract and conversion.

{¶ 11} In June 2016, the matter was tried to the Court of Claims, which issued an oral decision granting in part and denying in part Lill's request for relief. The Court of Claims ruled OSU had breached Lill's contract by denying her a new, fair, and impartial tenure evaluation. On July 12, 2016, the Court of Claims issued an interim decision that memorialized its findings of fact and conclusions of law, dismissed Lill's conversion claim, and rendered judgment in favor of Lill's breach of contract claim. Although the Court of Claims had been presented with evidence from both parties regarding Lill's damages, it deferred the calculation of damages until after OSU had conducted a new tenure review. The Court of Claims granted Lill equitable relief by sending the matter back to OSU's provost "to take such steps as he or she deemed necessary to assure a new, fair and impartial evaluation with respect to [Lill's] tenure review." (Sept. 8, 2017 Decision at 1.)

{¶ 12} OSU subsequently provided a new evaluation of Lill's tenure qualifications, in compliance with the Court of Claim's interim decision. On May 3, 2017, Lill received an email from OSU advising that her new tenure evaluation was negative, and she was denied tenure.

{¶ 13} On May 4, 2017, the parties notified the Court of Claims of Lill's tenure denial. On May 19, 2017, the Court of Claims ordered the parties to file briefs in lieu of a damages trial. Lill filed her post-trial brief on June 16, 2017, OSU filed its post-trial brief on July 14, 2017, and Lill filed her post-trial reply brief on July 28, 2017.

{¶ 14} Lill contended she should receive back pay (subject to mitigation for the job she later obtained) from her June 30, 2013 termination date through the year of her first proper tenure denial (2016-2017), followed by front pay for the required terminal year following the negative decision (June 30, 2018). Lill prefaced her damages demand with the following explanation:

> Prior to the Court's Interim Decision, the extent of Dr. Lill's damages were indefinite; it could be determined only after a new, fair, and impartial evaluation. Now that she has received the evaluation, this has become a straightforward case of wrongful termination in breach of a written contract. Dr. Lill's

> contract and the Rules did not permit her termination until she was denied tenure through a proper evaluation. Until that occurred, there was no way to determine when her employment should have ended. Now there is. Dr. Lill's contract guaranteed her employment through the conclusion of the academic year following her legitimate denial of tenure (her "terminal year"). Because that denial occurred during the 2016-2017 academic year, her contractual right to employment ends June 30, 2018, at the end of the 2017-2018 academic year. Dr. Lill's total lost wages through that period are $545,000. These lost wages, by operation of law and Dr. Lill's contract, must also entail additional retirement contributions according to the formula applicable to all faculty members, as well as statutory prejudgment interest. The total of Dr. Lill's damages is thus $669,210.97. Although OSU has failed to carry its burden of demonstrating Dr. Lill's interim earnings, she is voluntarily clarifying the record, post-trial, with the attached affidavit, setting out her interim earnings, less her related interim expenses. In the event OSU withdraws its stated objection to the admissibility of such additional evidence, Dr. Lill's damages will be reduced to $367,715.73.

(June 6, 2017 Pl.'s Post-Trial Brief at 1-2.) Lill also renewed her claim for relief for losing the use of her granted-funded laboratory equipment.

{¶ 15} Lill's post-trial brief set forth the basis for her monetary damages, premised on the argument that she was guaranteed employment until such time as she was denied tenure through a proper evaluation and for one terminal year thereafter. She asserted that she was not an at-will employee but, rather, a tenure-track associate professor whose probationary appointment could be terminated only under the procedures set forth in Rule 3335-6. Section 3335-6-03(G) provides:

> Probationary appointments may be terminated during any probationary year because of inadequate performance or inadequate professional development. At any time other than the fourth year review or mandatory review for tenure, a nonrenewal decision must be based on the results of a formal performance review conducted in accord with fourth year review procedures as set forth in paragraph (C)(3) of this rule. Notification of nonrenewal must be consistent with the standards of notice set forth in rule 3335-6-08 of the Administrative Code.

*Id.* at 3. Lill continued:

> It is undisputed Dr. Lill was not terminated pursuant to a fourth year review or a formal performance review conducted

in accord with fourth year review procedures. (Trial Transcript, Vol. II, p. 300). [Fn. 1 omitted.] OSU's only permissible basis for terminating Dr. Lill was therefore pursuant to a mandatory review for tenure. Dr. Lill's tenure review was deemed an improper evaluation by the University Senate Hearing Committee, which meant a new, fair, impartial evaluation was required. Rule 3335-5-05(6)(B) (Trial Exh. I, p. 3). As the Court's Interim Decision established, OSU failed to provide Dr. Lill with such a new evaluation prior to her June 2013 termination. Having failed to satisfy the essential requirements of OSU's tenure process, OSU failed to meet the only condition in Section 3335-6-03(G) that would have permitted Dr. Lill's termination. In short, Dr. Lill was subjected to a wrongful termination in violation of her contractual rights. She was not permitted to be terminated until she was denied tenure pursuant to the new review ordered by the Court, after which she should have remained employed for a terminal year. [Fn. 2 omitted.] Her proper termination date is June 30, 2018.

*Id.* at 3-4.

{¶ 16} Lill argues that any claim by OSU that "Rule 3335-6-03(G) permits it to terminate probationary faculty pursuant to *any* tenure review, irrespective of whether the review meets the standards set out in the Rules for a fair and impartial evaluation * * * cannot be the case," given that the tenure review procedures "are important enough to be codified in detail in the University Faculty Rules, and * * * are protected through the mandatory appeal provision of Rule 3335-5-05." (Emphasis sic.) *Id.* at 4.

{¶ 17} In a footnote, Lill observed that the Rules' provision for a terminal year of employment following a negative tenure evaluation did not apply in the case of a discretionary seventh-year review, which could be granted if new information arises after a fair review:

No new terminal year is provided in that instance because the faculty member has already been duly notified of his or her termination pursuant to an initial, *proper* review. OAC 3335-6-05(B) (Exh. 18, OSU_5479-80). No such exception appears in the Rules' discussion of new, fair, impartial evaluations ordered by the Hearing Committee, even though it appears in the same section of the Rules as the seventh-year review process. (OAC 3335-6-05(A); Trial Tr. Vol. II, pp. 394-395). The only plausible explanation for this is the Rules' intent to provide for a new terminal year when a candidate is denied tenure through a new, fair, and impartial review.

(Emphasis sic.) *Id.* at 4, fn. 2.  Lill asserted that "[t]his clear statement of OSU's policy has only one possible meaning: it is a contractual promise *not* to terminate a faculty member's probationary appointment based on an evaluation the Hearing Committee deems improper."  (Emphasis sic.) *Id.* at 5.  She continued:

> This conclusion is supported not just by the express language of the Rules, but by common sense.  As became clear through the testimony of Dr. Alutto, the provost who terminated Dr. Lill, it would be absurd to allow an improper evaluation to trigger Rule 3335-6-03(G)'s termination provision.  Otherwise, OSU could skip any consideration of a candidate's tenure credentials, informing the candidate of a denial before the process has even begun.  Although the Hearing Committee would no doubt find such an evaluation improper, this finding would have no practical effect, since the provost's initial denial would already have started the Rules' 12-month termination clock.  (Rule 3335-6-08(A)(3), Exh. 18, pp. 10-11, OSU_5481-82).  Dr. Alutto admitted this is not how the rule operates.  He saw no distinction between that situation, where virtually no evaluation occurs, and a situation where the candidate receives a longer, but still improper, evaluation.  (Trial Tr. Vol II, pp. 428-431).  The fact that OSU's administration *calls* a process a tenure review is not enough, where the Hearing Committee finds the process fell short of the Rules' definition of that term.  By Dr. Alutto's own reasoning, a candidate must remain employed until one year after a *legitimate* tenure evaluation concludes.

(Emphasis sic.) *Id.*

{¶ 18} Lill addressed the scope of her monetary damages, including her salary and benefits ($545,000.00 in wages, retirement contributions of $76,300.00, and compounded interest of $47,910.97) and interim earnings. She argued the burden of showing with reasonable certainty the amount she earned—or could have earned—while being wrongfully excluded from employment fell on OSU, as her employer, citing *State ex rel. Martin v. Bexley City School Dist. Bd. of Edn.*, 39 Ohio St.3d 36, 38 (1988) ("Since the amount of interim earnings is to be deducted from an award of back pay (thus reducing the employer's obligation to pay), the burden of showing what an employee earned during the period of wrongful discharge rests upon the employer."); *accord State ex rel. Hamlin v. Collins*, 9 Ohio St.3d 117, 119 (1984).  Lill stated that, under the holding in *Collins*, in the absence of such proof, she is entitled to her contracted salary.

{¶ 19} Lill submitted with her brief her affidavit that she claimed demonstrated "the amount and duration of her interim salary and benefits, as well as the interim expenses by which these amounts should be offset." (Pl.'s Post-Trial Brief at 8.) Paragraph three of her affidavit contains a table setting forth her wages and retirement contributions from Pennsylvania State University since December 3, 2014, listed by academic year (July 1 to June 30) and that her present compensation would continue through June 30, 2018.

{¶ 20} Lill also discussed OSU's failure to demonstrate that she failed to mitigate her damages, as it was OSU's burden as the employer, according to *Martin* at 38 (the burden falls on the employer to show what a wrongfully excluded employee did earn and, with reasonable certainty, could have earned).

{¶ 21} Finally, Lill discussed how her loss of use of her grant-funded laboratory equipment was an element of her breach of contract damages. She suggested that the Court of Claims could remedy the loss by granting the specific performance remedy she requested at trial; that is, to order OSU to transfer her remaining equipment to her current place of employment.

{¶ 22} OSU argued that Lill had not, and could not, show that she is entitled to any monetary damages. OSU contended Lill's employment contract with OSU expired on June 30, 2013, and she therefore was not entitled to monetary damages beyond that date. OSU concedes, however, that if it would be determined that Lill is entitled to an additional terminal year, her damages would be limited to an amount not exceeding one year of her base salary.

{¶ 23} On September 8, 2017, the Court of Claims issued its decision rejecting Lill's argument of wrongful termination and denying her any damages. The Court of Claims decided as a matter of law that Lill's tenure-track contact had expired in 2013:

> [Lill's] position provided for yearly appointment subject to annual reviews and renewal of her appointment. (Defendant's Ex. P). The position was a tenure-track position, and she was to be reviewed for tenure and promotion no later than during the fourth year of her appointment (2011-2012). Finally, [Lill's] contract provided that if she were denied tenure, she would receive a terminal faculty appointment for the academic year following the tenure review year. Thus, in [Lill's] fourth year of appointment, there were three employment outcomes available to her.

First, should she have decided not to apply for tenure or withdraw her consideration for tenure, her contract with OSU concluded after her four-year appointment. Second, if she applied for tenure and was denied, she would receive one terminal year of appointment, the 2012-2013 year. Third, if she applied for tenure and was granted tenure, she would receive new employment as a tenured professor with terms not provided for under her probationary contract. Simply, if she received tenure, her position as a tenured professor at OSU would be under a new employment contract. Importantly, there is no provision in her contract with OSU for her probationary period to extend beyond the four, potentially five, year period. In her post-trial brief and reply, [Lill] tries to characterize this case as an improper termination case. (Plaintiff's Post-Trial Brief, pp. 1, 3-4, Plaintiff's Reply, pp. 1-2). The Court disagrees; this was not an improper termination by [OSU]. Rather, [Lill's] contract expired.

(Sept. 8, 2017 Decision at 5-6.) The Court of Claims concluded:

The Court finds that [Lill] is not entitled to any monetary damages as a result of the breach of contract by OSU. Here, [Lill] applied for tenure, received a proper hearing, was denied tenure, and received her terminal year of employment. She received all the benefits afforded to her by her employment contract with OSU. After her terminal year of employment, her contract with [OSU] concluded, and she was not hired for a new position. Contrary to [Lill's] argument that until a proper evaluation was conducted there was no way to determine when her employment would have ended, [Lill's] employment contract with OSU determined when her employment ended. [Lill] failed to present the Court with any evidence that her contractual relationship with OSU entitled her to further benefits beyond those detailed in her employment contract.

*Id.* at 6.

{¶ 24} Lill now appeals the Court of Claims' decision denying her any damages.

## II. ASSIGNMENT OF ERROR

{¶ 25} Lill presents a sole assignment of error for our review:

The trial court erred in holding that a tenure-track professor whose contract guaranteed she could not be terminated without a valid tenure review, and whose employer breached her contract by terminating her without a valid tenure review, could not recover any damages for that wrongful termination.

### III.  LAW AND DISCUSSION

#### A.  Standard of Review

{¶ 26}  We are presented with questions of law and fact.  The preliminary question concerns contract interpretation, which is a matter of law for the Court.  "The construction and interpretation of written contracts involves issues of law that an appellate court reviews de novo."  *Electronic Classroom of Tomorrow v. Ohio Dept. of Edn.*, 10th Dist. No. 16AP-863, 2017-Ohio-5607, ¶ 36. In interpreting contracts, this Court "has emphatically stated that contracts must be read as a whole, and individual provisions must not be read in isolation."  *Nour v. Shawar*, 10th Dist. No. 13AP-1070, 2014-Ohio-3016, ¶ 14.   The contract's words are given their ordinary meaning unless this will result in "manifest absurdity" or unless "some other meaning is clearly intended from the face or overall contents of the instrument."  *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 245-46 (1978).  Where the drafters showed they knew how to include specific language in one provision, it must be concluded they intended to exclude that from a parallel provision where it is omitted.  *Nour* at ¶ 12, citing *Continental Tire N. Am. v. Titan Tire Corp.*, 6th Dist. No. WM-09-010, 2010-Ohio-1355, ¶ 54.  Any ambiguities in the contract are to be strictly construed against the party who drafted it.  *See, e.g., Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 314 (1996).

{¶ 27}  The question of the amount of damages, if any, is a factual issue, and thus it "is within the jury's [or factfinder's] province to determine the amount of damages to be awarded."  *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 475, 2007-Ohio-6948.

#### B.  Discussion

{¶ 28}  The Court of Claims rejected Lill's argument that this case had become a straightforward case of wrongful termination in breach of a written contract.  Rather, the Court of Claims concluded it was a breach of contract case.  The Court of Claims relied on the holding in *Tri-State Asphalt Corp. v. Ohio Dept. of Transp.*, 10th Dist. No. 94API07-986 (Apr. 11, 1995), citing *Geygan v. Queen City Grain Co.*, 71 Ohio App.3d 185, 195 (12th Dist.1991), for the proposition that "a party seeking damages for breach of contract must present sufficient evidence to show entitlement to damages in an amount which can be ascertained with reasonable certainty."  *Tri-State Asphalt*; Sept. 8, 2017 Decision at 5.  The Court of Claims determined Lill had failed to present any evidence that she was entitled to

benefits beyond those detailed in her employment contract, and, therefore, it denied her any damages.

{¶ 29} Lill argues the Court of Claims erred when it interpreted her employment contract with OSU to mean that it "expired" after the five years—four probationary years plus one terminal year following denial of tenure—specified in her hiring letter. She submits that OSU is contractually required to provide her a fair tenure evaluation as a condition precedent to terminating her employment. She offers the following in support of her argument:

> By design, a contract requiring OSU to employ a tenure-track faculty member until it provides a fair evaluation is self-enforcing: the longer OSU withholds the guaranteed fair review, the longer it must continue to employ the faculty member. In contrast, the kind of contract envisioned by the trial court, allowing a faculty member to be terminated based on an admittedly improper evaluation, and imposing no consequence whatsoever for withholding a proper evaluation for years, would be impossible to enforce (and thus, a nullity).

(Dec. 18, 2017 Lill's Brief at 4-5.)

{¶ 30} OSU acknowledged that Lill was entitled to a terminal year of employment, but claims she received one and has no right to anything more because her "application for tenure was denied and her terminal year began to run in the late Spring of 2012." (July 14, 2017 Def.'s Post-Trial Brief at 2.)

{¶ 31} OSU's position seems objective, rational, and fair on initial consideration, until one considers that OSU commenced Lill's terminal year in 2012, five years before properly denying her tenure. OSU makes no distinction between the termination of a faculty member who was denied tenure after receiving a proper tenure evaluation the first time around and the termination of a faculty member who was denied tenure based on an initial, improper tenure evaluation and was forced to litigate in order to receive a proper tenure evaluation after a gap of five years. As applied here, OSU's position means Lill's terminal year and termination of employment could be triggered by any tenure denial, even an improper one. On review, it appears that OSU's position guts the very provisions referenced in Lill's hiring letter underlying the parties' expectations that decisions on her tenure or nonrenewal would be free from arbitrariness or capriciousness and would not violate academic freedom and that she was guaranteed the right to appeal improper denials.

{¶ 32}  The record elucidates the situation in the instant case was of OSU's making, from start to end. OSU adopted the Rules governing tenure track appointments, incorporated the Rules into employment contracts, and enforced procedures implementing the Rules.  OSU could have prevented the dispute from arising altogether by simply following its own Rules in the first instance; moreover, it could have resolved the situation much sooner by taking corrective action before Lill commenced this action.  Instead, OSU through its Provost, Alutto, blatantly and knowingly failed and/or refused to follow its Rules when conducting Lill's tenure review during the 2011-2012 academic year. OSU further doggedly defended its right to act arbitrarily against its Rules until the Court of Claims set it straight four years later, ordering OSU to take remedial action that satisfied the requirements of its Rules.  It then took OSU approximately ten more months to comply with the Court of Claims' order.

{¶ 33}  Lill's contract guaranteed one of three outcomes before the end of her probationary period: her voluntary withdrawal from the tenure track; an award of tenure based on a proper, positive evaluation of her tenure qualifications; or the initiation of a nonrenewal process based on a proper, negative evaluation of her tenure qualifications and which provides a binding appeal process.

{¶ 34}  Lill's contract as OSU presents it here recognizes only the contract's reference to a four-year probationary period and the terminal year after a tenure denial, ignoring the prerequisites of a Rules-compliant tenure-track termination.  It would appear that, until now, OSU's view of the contract is that, regardless of contract provisions, all terminations are valid, whether or not preceded by a proper tenure evaluation.

{¶ 35} We note that no one disputes that the probationary period between Lill's hiring and the completion of her mandatory tenure review was supposed to be four years, followed by a fifth terminal year if the tenure review was negative.  The record indicates other things also were supposed to happen, however. Lill was supposed to receive a fair tenure review consistent with departmental and university procedures.  She was supposed to be able to contest an improper review through a binding appeal process.  If the appeal process resulted in a finding that her tenure evaluation was improper, she was supposed to receive a new, fair, and impartial evaluation promptly.  This lawsuit evidences, however, that what was supposed to happen did not happen.

{¶ 36} Rule 3335-6-03(B)(2) provides, "a probationary appointment may be terminated at any time subject to * * * the provisions of paragraphs (G), (H), and (I)." (Pl.'s Trial Ex. 18 at 3.) Paragraphs (G) and (I) provide that tenure denials and other forms of nonrenewal "may not be arbitrary or capricious or carried out in violation of a faculty member's right to academic freedom" and that they are subject to the appeal process in Rules 3335-5-05 and 3335-6-05. *Id.* at 5-6. Rule 3335-6-05(A) clarifies that the role of OSU's internal appeal process is to enforce its policy "to make decisions regarding the renewal of probationary appointments and promotions and tenure in accordance with the standards, criteria, policies, and procedures stated in these rules." *Id.* at 8.

{¶ 37} These rules do not provide for a tenure-track probationary appointment to simply expire after four years. The four-year period is not a term limit. Rather, it is a deadline by which OSU must provide a proper tenure review. Additionally, nothing in these provisions permits OSU to end a tenure-track appointment based on an improper evaluation. Lill's contract did not simply require a tenure evaluation; it required an evaluation conducted "in accordance with" the Rules and a binding appeal if it was not so conducted.

{¶ 38} If OSU's argument here were adopted, a contract that provides for a faculty member's termination only after a valid, negative review, followed by a terminal year, would be transformed into a contract that permits OSU to terminate a faculty member after a fixed number of years, even if the basis for the termination is found to be invalid by the review committee specifically authorized by the contract to do so.

{¶ 39} OSU is presumed to have drafted Lill's employment contract and to have done so in good faith. It is further presumed that OSU did not envision a situation where it would blatantly breach the contract provision requiring a fair and impartial tenure evaluation and then deny a new, proper evaluation for five years. To the contrary, OSU's provost at the time of Lill's initial, improper tenure denial testified at the June 2016 trial that had he remanded promptly for a new tenure evaluation and the ensuing review process had been afforded to Lill, a new denial of tenure would have been followed by a terminal year. The terminal year was predicated on the faculty member remaining employed during the tenure process and leaving one year after the tenure denial. The conditions interacted, restricting OSU's authority to terminate a tenure-track faculty member. Because OSU has

drafted the contract and was solely responsible for the breach of the contract, the silence of the contract on what would happen in the event of the breach should not be held against Lill.

{¶ 40} The Ohio State University Chapter of the American Association of University Professors and the Ohio Employment Lawyers Association filed a brief amici curiae in support of Lill. The brief faults the Court of Claims' ruling that "a terminal year after a tenure decision in breach of her contract was the equivalent of a terminal year after a tenure decision reached in compliance with her contract," stating the "ruling reflects a false equivalence and leaves [] Lill far short of a make-whole remedy for the breach of contract." (Dec. 18, 2017 Amici Curiae's Brief at 5.) The brief argues that "[a] terminal year is inextricably intertwined with the tenure decision process. Only when the process is followed as provided by the contract does the terminal year arise." *Id.*

{¶ 41} The *amici curiae* brief challenges the Court of Claims' determination that Lill's contract had simply expired as of June 30, 2013, failing to entitle her to any damages:

> [Lill's] employment contract, drafted by OSU, did not expire on its own. In *Eckel* [*v. Bowling Green State Univ.*, 10th Dist. No. 11AP-781], 2012-Ohio-3164, ¶ 28, the professor's employment contract incorporated the University's charter, but the "charter's failure to address BGSU's ability to suspend a tenured faculty member" raised the issue of its authority to do so. This Court recognized that the Charter "specifically defines tenure" and "further provides that a faculty member's tenure 'shall continue until one of the' " delineated conditions, such as death, occurs. *Id.* at ¶ 29.
>
> As at bar, "[b]oth parties acknowledge that none of the above-listed conditions occurred here." *Id.* at ¶ 30. The Court then held: 'Because none of those events occurred, BGSU violated plaintiff's right of tenure, as specified in Section B-I.C.3 of the academic charter, in suspending plaintiff without pay." *Id.*
>
> OSU violated Dr. Lill's contractual rights because the conditions of her non-renewal due to denial of tenure were not satisfied until May 3, 2017. *Accord McConnell v. Howard Univ.*, 818 F.2d 58, 66-67 (D.C. Cir. 1987) * * *.
>
> There seems to be no rule that precludes OSU from granting an additional terminal year. To comply with the conditions of Dr. Lill's contract [,] OSU could have done so directly or used one of a variety of appointments to do so directly. In any event, the

> core of the contract – employment ends when tenure is denied and a terminal year is given – must be enforced.
>
> The Court of Claims short-circuited this analysis by focusing on the four-year phrase and concluding that Dr. Lill's contract had expired after the terminal year. The Faculty Rules did not provide merely a four-year contract that could be extended for a fifth terminal year. They provided an entire tenure process and standards: the middle between the fourth and final years. Somehow, the Court of Claims divorced the duration from all the conditions the Faculty Rules imposed.
>
> Under the Faculty Rules, a *new* procedure, whenever it was afforded, would be followed, if tenure was again denied, by a terminal year. Because OSU forced Dr. Lill to leave at the end of the 2012-13 academic year before the new procedure was afforded, a make-whole remedy required that damages consistent with the breach be awarded.

(Emphasis sic.) *Id.* at 7-9.

{¶ 42} The Rules govern tenure-track contracts and specify their termination, which is only by nonrenewal and not by expiration. The conditions imposed by the Rules provide that tenure-track faculty are subject to certain procedures and protections. The Rules require appointment of professors or associate professors to tenure-track positions or a probationary period not to exceed four years. OSU notified Lill of her termination in June 2012, during her fourth probationary year.

{¶ 43} During the probationary period, promotion and tenure can be terminated at any time, but only subject to the notice provisions of Rule 3335-6-08 and the provisions of paragraphs (G), (H), and (I) of that Rule. Rule 3335-6-03(B). Probationary appointments also may be terminated during any probationary year due to poor performance or inadequate professional development, subject to strict procedural requirements. OSU did not purport to notify Lill that it was terminating her probationary appointment, pursuant to Rule 3335-06-08 or 3335-06-03(G), (H), or (I), and it did not follow any established procedures for doing so.

{¶ 44} At any time other than the fourth-year review or mandatory review for tenure, a nonrenewal decision must be based on the results of a formal performance review conducted in accord with fourth-year review procedures and standards as set forth in Rule 3335-5-05(C)(3). OSU did not purport to base Lill's nonrenewal on the results of a

performance review under Rule 3335-5-05(C)(3).  That left only nonrenewal pursuant to the mandatory final review for tenure.

{¶ 45}  The duration of appointments for tenure-track faculty is set by Rule 3335-6-03.  Lill was hired as an associate professor with a probationary period not to exceed four years. Rule 3335-6-03(B)(1).  The duration was conditioned by the provision of (B)(3) that she be "informed no later than the end of the year in which [her] mandatory review for tenure takes place as to whether tenure will be granted by the beginning of the following year." (Pl.'s Trial Ex. 18 at 3.)  Upon denial, Lill was entitled to another year of employment: "If tenure is not granted, a one year terminal year of employment is offered." *Id.*

{¶ 46}  An appeal may be taken from denial of tenure. If the Hearing Committee finds the tenure evaluation was improper, as it did on Lill's appeal, the provost "shall take such steps as may be deemed necessary to assure a new, fair, and impartial evaluation." (Def.'s Trial Ex. I at Rule 3335-5-05(C)(6)(b).)  "If a decision is remanded under paragraph (C)(6)(b) of this rule, it shall be reconsidered promptly."  (Pl.'s Trial Ex. 7 at 3, Rule 3335-6-05(C)(7).)

{¶ 47}  Based on our de novo review of the record, we find, as a matter of law, the provisions of Lill's employment contract, taken as a whole, required OSU to conduct a proper evaluation of Lill's tenure qualifications before issuing a tenure denial that would trigger an ensuing terminal year.  Because OSU failed to satisfy that condition prior to terminating Lill, OSU unlawfully terminated Lill's employment on June 30, 2013.  Consequently, we find that Lill's contract did not expire, the terminal year did not start to run at the end of the fourth year (2012), and the Court of Claims erred by concluding otherwise.   Rather, Lill's contract continued until it was nonrenewed following the completion of a valid tenure evaluation in May 2017.  Because Lill's contract with OSU continued until it was not renewed, she had a continued right to employment at OSU through June 30, 2018, the end of the terminal year triggered by her valid negative tenure decision. We further find, although Lill mitigated her damages resulting from OSU's breach of contract, she incurred monetary damages for which she is entitled to recover.

{¶ 48}  Accordingly, Lill's assignment of error is sustained.

## IV.  CONCLUSION

{¶ 49}  Having conducted a de novo review of the record, we hold that the Court of Claims of Ohio erred in finding that Lill was not entitled to any damages.  We reverse the

decision of the Court of Claims of Ohio and remand this matter for a determination of Lill's damages in a manner consistent with this decision.

*Judgment reversed; cause remanded.*


TYACK, J., concurs.
BROWN, J., dissents.

BROWN, J., dissenting.

{¶ 50}  I agree with the Court of Claims that this case presents a breach of contract claim and not an action for wrongful termination.  There is no dispute that OSU breached the contract with appellant and that appellant was entitled to put forth evidence as to damages.  However, I do not agree with the majority that the breach indefinitely extended the terms of the contract until a proper tenure review, in the absence of contractual language or evidence of other promises to that effect.  I therefore respectfully dissent.