[Cite as *Talmadge Crossing, L.L.C. v. Andersons Inc.*, 2022-Ohio-645.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Talmadge Crossings, LLC                    Court of Appeals No.  L-21-1113

        Appellant                          Trial Court No.  CI0202002127

v.

The Andersons, Inc., et al.                **DECISION AND JUDGMENT**

        Appellee                           Decided:  March 4, 2022

* * * * *

Marvin A. Robon, Zachary J. Murry, for appellant.

Gerald R. Kowalski and Jennifer A. McHugh,
for appellee

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, Talmadge Crossing, LLC, appeals from a decision by the Lucas County Court of Common Pleas granting summary judgment in favor of appellee, The Andersons, Inc.  For the reasons that follow, we affirm the judgment of the trial court.

## Statement of the Case and the Facts

{¶ 2} Appellee closed its West Toledo retail store in 2017, and soon after began to market the property for sale. The property to be sold included several buildings, with more than 150,000 square feet "under roof."

{¶ 3} On July 3, 2018, appellee accepted an offer from Marino Design Group, LLC ("Marino") to purchase the property for $5,200,000. A purchase contract was entered into between the parties, with Joseph Swolsky acting as the principal for Marino. Marino subsequently assigned its interest in the purchase contract to Talmadge Crossing, LLC, an entity in which Swolsky is an owner. It is undisputed that appellant is a "sophisticated" party, and understood that it was purchasing a facility that had been unoccupied and vacant for months.

{¶ 4} Section 2(h) of the purchase contract expressly permitted appellant, as the buyer, to inspect and tour the facility, stating:

Premises Access: Buyer will have reasonable access to the Premises for purposes of engineering, survey, soil testing and environmental review, and such other physical due diligence investigations and analyses as Buyer deems reasonably necessary. Buyer will request each access to the Premises from Seller no less than two (2) business days in advance and will enter the Premises only with Seller's advance written consent, which consent shall not be unreasonably withheld. Buyer will comply with any

2.

Seller rules, regulations and insurance requirements while on the Premises and repair and restore any damage to the Premises due to such investigations.

{¶ 5} Appellant accessed the facility pursuant to Section 2(h) at least twice after signing the purchase contract and concedes that during the last walk-through prior to closing, "all aspects of the building and property were in the same condition they were in when the offer to purchase was originally made in July 2018."

{¶ 6} The closing occurred on November 15, 2018, and appellant acquired the deed to the subject property. A day later, appellant's representative, Fred Khechen, walked through the facility with appellee's representative, Jon Zabowski. During the walk-through, it was discovered that, at some point after appellant's final inspection, unknown third parties had entered the building and committed acts of vandalism to the property, and, further, had stolen copper and other saleable materials.

{¶ 7} Appellant filed its complaint on May 11, 2020, alleging claims against appellee for breach of contract, negligence, fraudulent concealment, fraudulent representation and inducement, conspiracy, and agency liability. On February 1, 2021, appellant filed a motion for partial summary judgment on its breach of contract claim. On March 8, 2021, appellee filed a consolidated opposition to appellant's motion and cross-motion for summary judgment on all of the claims set forth against it in appellant's complaint. On May 20, 2021, the trial court issued an opinion and judgment entry granting summary judgment for appellee on the entirety of the complaint and denying

3.

appellant's motion for partial summary judgment.  Plaintiff timely filed an appeal from the trial court's decision.

## Assignment of Error

{¶ 8} In this appeal, appellant sets forth the following assignment of error:

I.  The trial court committed reversible error by denying Plaintiff-Appellant's Motion for Partial Summary Judgment and entering summary judgment in favor of the Defendant-Appellee on Plaintiff's breach of contract claim.

## Analysis

{¶ 9} Appellate court review of a trial court's judgment granting a motion for summary judgment is *de novo*.  *K&D Mgt., L.L.C. v. Jones*, 8th Dist. Cuyahoga No. 110262, 2021-Ohio-4310, ¶ 16.  Thus, an appellate court "examine[s] the evidence to determine if as a matter of law no genuine issues exist for trial."  *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist. 1997).  In doing so, an appellate court must "consider all facts and inferences drawn in a light most favorable to the nonmoving party."  *Glemaud v. MetroHealth Sys.*, 8th Dist. Cuyahoga No. 106148, 2018-Ohio-4024, ¶ 50.

{¶ 10} Summary judgment is properly granted where: (1) "there is no genuine issue as to any material fact," (2) "the moving party is entitled to judgment as a matter of law," and (3) "reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made."  *Harless*

4.

*v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978); see also Civ.R. 56(C).

{¶ 11} The moving party has the initial burden of identifying "those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving parties claims." *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). If the moving party fails to meet this burden, summary judgment is not appropriate. *Id.* But if the moving party meets this burden, the non-moving party then "has a reciprocal burden * * * to set forth specific facts showing that there is a genuine issue for trial." *Id.*

{¶ 12} We find the doctrine of "merger by deed" to be applicable to appellant's claim of breach of contract under the purchase agreement. "The doctrine of merger by deed holds that 'when a deed is delivered and accepted without qualification pursuant to a sales contract for real property, the contract becomes merged into the deed and no cause of action upon said prior agreement exits.'" *Wasserman v. Copsey*, 6th Dist. Sandusky No. S-12-008, 2013-Ohio-1274, ¶ 7, quoting *Parahoo v. Mancini*, 10th Dist. Franklin No. 97APE08-1071, 1998 WL 180539 (Apr. 14, 1998), citing *Fuller v. Drenberg*, 3 Ohio St.2d 109, 111, 209 N.E.2d 417 (1965). As noted by the Fourth District Court of Appeals, in *Newman v. Group One*, 4th Dist. Highland No. 04CA18, 2005-Ohio-1582:

'In reality, this doctrine is merely an application of the contract doctrine of integration. Under this doctrine, all prior documents are considered to be integrated into the final contract, and only the provisions contained in the

5.

final contract are part of the agreement. This doctrine is the combined result of the parol evidence rule and the rule of interpretation which seeks to determine the intentions of the parties. Thus, if it can be shown that the parties actually intended that the provisions of a prior agreement continue in force, then the provisions do so continue. Similarly, the merger doctrine should only be applied as a canon of construction that attempts to arrive at the true intention of the parties to a deed. *Thus, if there is a specific survival clause in the prior contract of sale, or in a contemporaneous document delivered at the same time as the deed, which states that its provisions are to survive the delivery of the deed, then the merger doctrine does not apply. * * *.'*

*Id.* at ¶ 13, quoting 14 Powell on Real Property (1995) 81A-136, Section 81A.07[1][d] (emphasis in original).

{¶ 13} Here, appellant accepted the deed without qualification on November 15, 2018, with no protest or reservation of rights and, therefore the doctrine of merger by deed is applicable. Upon closing, the purchase agreement merged with the deed, thereby precluding appellant's breach of contract claim.

{¶ 14} Arguing against this conclusion, appellant reads three specific provisions in the purchase agreement to mean, either alternately or together: (1) that appellee "warranted that the condition of the premises upon closing and delivery of the deed would be the same as the condition it was in at the time that the contract was executed";

6.

and (2) this "warranty and contractual obligation" survived closing and did not merge with the deed.

{¶ 15} In considering appellant's claim, we are mindful that "[t]he construction and interpretation of written contracts involves issues of law that an appellate court reviews de novo." *Lill v. Ohio State Univ.*, 2019-Ohio-276, 132 N.E.3d 148, ¶ 26 (10th Dist.) (quotation omitted). In interpreting a contract, a reviewing court must read the contract "as a whole and presume that the intent of the parties is reflected in the language used by the parties in a contract." *Mynes v. Brooks*, 4th Dist. Scioto No. 08CA3211, 2009-Ohio-5017, ¶ 28. The words in a contract "will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph two of the syllabus. In addition, [w]here the drafters showed they knew how to include specific language in one provision, it must be concluded they intended to exclude that from a parallel provision where it is omitted." *Lill* at ¶ 26; *see also Continental Tire N.Am. v. Titan Tire Corp.*, 6th Dist. Williams No. WM-09-010, 2010-Ohio-1355, 2010 WL 1223981, ¶ 54 (holding that where express reference to "attorney fees" or "legal proceedings" was present in one section of the contract but noticeably absent from the one upon which appellee specifically relied, appellee's claim for attorney fees must fail.).

7.

{¶ 16} In the instant case, appellant relies on contractual provisions set forth in sections 15(h) and (i) and 6 (f). Sections 15(h) and (i) are properly read independently of the other provisions in section 15, and provide as follows:

(h) *Until Closing*, Seller bears all risk of loss due to fire or other casualty at the Premises. If the Premises is damaged or destroyed by fire or casualty before Closing, then Purchaser will receive all proceeds made payable to Seller under insurance policies covering the Premises on Closing.

(i) *As of Closing* and delivery of the Deed to the Premises, Buyer is purchasing and acquiring title to the Premises in its current "AS IS" condition and "WHERE IS". Time is of the essence.

(Emphasis added.)

{¶ 17} Unlike sections 15(h) and (i), section 6(f) is more appropriately read within the context of the whole of section 6, which provides as follows:

6. *Seller represents and warrants to Buyer that*:

(a) Seller has all requisite power to enter this Agreement and to perform the terms, covenants and conditions hereof.

(b) The execution and delivery of this Agreement by Seller has been duly authorized by all necessary persons or entities, and when executed and delivered, this Agreement will be a legal, valid and binding obligation of Seller, enforceable against Seller in accordance with its terms, and that each

8.

individual signatory on behalf of Seller is duly authorized and empowered to execute this Agreement on behalf of Seller.

(c) To the knowledge of the Seller officer executing this Agreement, Seller has received no written notice within the past year of any condemnation proceedings against the Premises (the Premises does not include the City Parcel), nor of any contemplated improvements to the Premises by public or governmental authority, the cost of which is to be assessed as special taxes against the Premises in the future.

(d) As of the Acceptance Date, there is no pending, and Seller, to the knowledge of the Seller officer executing this Agreement, has received no written notice of any threatened litigation or administrative proceeding affecting title to or the transfer of the Premises, except as specifically disclosed in this Agreement.

(e) The Property is not subject to any pending appeal requesting a change in the assessed value of the Property.

(f) *Each of the representations and warranties of Seller contained in this Agreement is made as of the date of Closing and shall survive the Closing for **Ninety (90) days** and shall not be merged into the deed.*

(Emphasis in italics added; emphasis in bold in original.)

{¶ 18} Appellant urges this court to read sections 15(h) and (i) as providing that appellant was to acquire the property "in the condition it was in when the contract was

9.

executed in July 2018." We disagree with appellant's interpretation, inasmuch as section 15(i) clearly and unambiguously provides that appellant purchased and acquired title to the facility in its current "AS IS" and "WHERE IS" condition "[a]s of Closing and delivery of the Deed to the Premises." Nothing in section 15(i) references a purchase contract signature date, and nothing in the provision can be reasonably read to imply a seller's duty to "preserve the premises" during the period of time that elapsed between execution of the contract and closing.

{¶ 19} Regarding the survival of the seller's responsibility under section 15(h), we note that although section 15(h) does provide that the seller "bears all risk of loss due to fire or other casualty" "before closing," it also specifies that the seller bears the risk of loss only "[u]ntil closing." By contrast, under section 6(f), "[e]ach of the representations and warranties of Seller contained in this Agreement is made *as of the date of closing.*" (Emphasis added.) As the obligations of section 15(h) expressly terminate at closing, we are disinclined to read section 6(f) to mean that section 15(h) survives closing.

{¶ 20} In addition, under section 6(f), only "the representations and warranties of Seller" shall survive closing and not be merged into the deed.[1] Here, the purchase agreement sets forth the seller's representations and warranties by way of enumeration in

---

[1] Although section 6(f) only speaks to "representations and warranties of Seller," we note that other terms of the contract reference specifically and separately "obligations," "covenants," and "agreements" that are to be performed by the seller. *See, e.g.,* section 11 of the purchase agreement (addressing the seller's failure to comply with "any or all obligations, covenants, warranties or agreements).

sections 6(a) through (e).  Sections 15(h) and (i) are simply not included in the list of the seller's representations and warranties.

{¶ 21} In reaching this conclusion, we are not unaware of the provision set forth in section 15(e), which provides that "[t]he captions in this Agreement are for convenience only and shall not be considered a part of or affect the construction or interpretation of any provision of this Agreement."  As explained through our analysis above, however, we have determined -- irrespective of the captioning of the agreement -- that there are no representations or warranties in the contract outside of those found in sections (a) through (e) that would avoid application of the merger by deed doctrine.

{¶ 22} For all of the foregoing reasons, it must be concluded that sections 15(h) and (i) were never intended to be "representations and warranties," and, thus, they do not survive closing.  *See Lill*, 2019-Ohio-276, 132 N.E.3d 148, at ¶ 26.  Accordingly, we find appellant's sole assignment of error not well-taken, and the judgment of the Lucas County Court of Common Pleas is affirmed.  Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                               _____

                                                                    JUDGE

Christine E. Mayle, J.

Gene A. Zmuda, J.                                   _____

CONCUR.                                                           JUDGE

                                                                       _____

                                                                    JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.