[Cite as *Toledo v. State*, 2026-Ohio-1625.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| City of Toledo, | : | |
| Plaintiff-Appellant, | : | No. 25AP-872 |
| | | (C.P.C. No. 24CV-8714) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| State of Ohio, | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on May 5, 2026

**On brief:** *John T. Madigan* and *Jeffrey B. Charles*, for appellant. **Argued:** *John T. Madigan*.

**On brief:** *Dave Yost*, Attorney General, *Stephen P. Tabatowski*, and *Gregory A. Rustico*, for appellee. **Argued:** *Stephen P. Tabatowski*.

APPEAL from the Franklin County Court of Common Pleas

EDELSTEIN, J.

{¶ 1} Plaintiff-appellant, City of Toledo, appeals from a decision and judgment entry of the Franklin County Court of Common Pleas granting the motion for summary judgment of defendant-appellee, the State of Ohio. For the following reasons, we affirm with modifications.

## I. Facts and Procedural History

{¶ 2} Under former Toledo Municipal Code 313.12, Toledo operated a municipal camera-enforced traffic program to issue fines to drivers for both speeding and traffic light

violations within the city. (Compl. at ¶ 1.) When the cameras detected a traffic law violation, Toledo sent a traffic ticket to the registered owner of the vehicle that committed the violation. (Compl. at ¶ 2.) The registered owner could avoid responsibility by providing an affidavit stating the name and address of the person operating the vehicle at the time of the violation or by providing a law enforcement report indicating the vehicle had been reported stolen prior to the time of the violation. (Compl. at ¶ 2.)

{¶ 3} In 2019, as part of H.B. 62, the General Assembly enacted R.C. 5747.502 ("the spending setoff") to offset the amount of local government funding the state distributes to a municipality that chooses to operate a camera-enforced traffic program based on the amount of money the municipality collected from the program. (Compl. at ¶ 4.) R.C. 5747.502 requires the municipality to file with the tax commissioner a report of the gross traffic camera fines collected during the preceding fiscal year, and the tax commissioner then computes a local government fund adjustment or a residual adjustment for the municipality. The statute specifically directs the commissioner to reduce local government fund payments to a municipality based on the local government fund adjustment. R.C. 5747.502(C)(1).

{¶ 4} In May 2019, Toledo filed a complaint in the Lucas County Court of Common Pleas challenging the constitutionality of certain provisions of H.B. 62, including the spending setoff in R.C. 5747.502 ("the Lucas County case"). Toledo sought a declaratory judgment, a preliminary injunction, and a permanent injunction. (Compl. at ¶ 5.) On July 1, 2019, Toledo obtained a preliminary injunction in the Lucas County case enjoining the state from enforcing the contested provisions and from reducing Toledo's local government funds for noncompliance with R.C. 5747.502. (Compl. at ¶ 7; Ex. 1.) Toledo continued to operate its camera-enforced traffic program until June 24, 2020, when the Supreme Court of Ohio issued its decision in *State ex rel. Magsig v. Toledo*, 2020-Ohio-3416, holding municipal courts have exclusive jurisdiction over civil traffic enforcement violations. (Compl. at ¶ 7.) Following the Supreme Court's decision in *Magsig*, on August 18, 2020, the Lucas County Court of Common Pleas partially vacated the portion of the preliminary injunction in the Lucas County case enjoining the state from enforcing R.C. 1901.20(A)(1) and 1907.02(C). (Compl. at ¶ 7.)

**{¶ 5}** The state then moved for summary judgment in the Lucas County case. (Compl. at ¶ 8.) The trial court determined several of Toledo's claims were moot based on Toledo's suspension of its camera-enforced traffic program. (Compl. at ¶ 8; Ex. 2.) Additionally, the trial court found the spending setoff provision in R.C. 5747.502 was unconstitutional and issued a permanent injunction enjoining the enforcement of R.C. 5747.502. (Compl. at ¶ 8; Ex. 2.) Both parties appealed, and the Sixth District Court of Appeals reversed the trial court's ruling that Toledo's claims were moot, remanding the case to the trial court for consideration of those claims. *Toledo v. State*, 2022-Ohio-1192 (6th Dist.). The Sixth District Court of Appeals did not reach the question of the constitutionality of R.C. 5747.502. *Id.* at ¶ 20.

**{¶ 6}** While the Lucas County case was still pending on remand, the Supreme Court issued a decision in *Newburgh Heights v. State*, 2022-Ohio-1642. The court ruled the spending setoff provisions of R.C. 5747.502 were constitutional and did not violate the Home Rule Amendment in Article XVIII of the Ohio Constitution, holding "[t]he General Assembly therefore has exclusive discretion to reduce the appropriation of local-government funds to a municipality in the amount that the municipality has collected in fines from citations issued based on the operation of traffic cameras." *Newburgh Hts.* at ¶ 5. Based on *Newburgh Heights*, the trial court in the Lucas County case vacated its prior injunction and, in an August 29, 2022 order and judgment, granted the state's motion for summary judgment. *Toledo v. State*, Lucas C.P. No. CI-201802922.

**{¶ 7}** After the Supreme Court's decision in *Newburgh Heights*, the Department of Taxation notified Toledo it would enforce R.C. 5747.502 and reduce Toledo's share of local government fund distribution by the amount of money Toledo received during the operation of its camera-enforced traffic system from July 1, 2019 through August 29, 2022, the duration of the injunction in the Lucas County case. (Compl. at ¶ 22-23.) Toledo collected $6,856,864 from its camera-enforced traffic system during this timeframe. (Compl. at ¶ 24.)

**{¶ 8}** On June 12, 2024, Toledo filed the instant complaint in the Lucas County Court of Common Pleas seeking (1) preliminary and permanent injunctions prohibiting the state from enforcing R.C. 5747.502 or reducing Toledo's local government funds; (2) an order requiring the state to restore all local government fund distributions to Toledo that

were withheld related to the effective dates of the injunction from the Lucas County case; and (3) a declaratory judgment declaring the enforcement of R.C. 5747.502 and reduction of local government fund distributions to Toledo related to the effective dates of the injunction is unconstitutional or otherwise invalid. Toledo generally argued the state cannot enforce R.C. 5747.502 for the period the Lucas County case injunction was in effect, from July 1, 2019 to August 29, 2022. (Compl. at ¶ 25.) On the state's motion, the Lucas County Court of Common Pleas transferred venue to Franklin County.

{¶ 9} Once venue was transferred to Franklin County, the state moved to dismiss Toledo's complaint, arguing it was not violating the injunction, R.C. 5747.502 is and always has been constitutional, and R.C. 5703.38 deprived the trial court of subject-matter jurisdiction to enjoin orders, determinations, or directions of the Department of Taxation. In a March 28, 2025 entry, the trial court denied the state's motion to dismiss, determining it would not engage in statutory interpretation at the pleading stage, and finding Toledo sufficiently pled the elements of declaratory judgment to survive a motion to dismiss.

{¶ 10} Thereafter, in July 2025, the parties filed cross-motions for summary judgment. The state argued R.C. 5703.38 precludes courts from issuing injunctive relief suspending or staying any order of the Department of Taxation. Additionally, the state argued R.C. 5747.502 plainly directs the tax commissioner to compute local government funds on a rolling basis, and the Supreme Court's decision in *Newburgh Heights* expressly found the spending setoff provisions of R.C. 5747.502 to be constitutional. Toledo argued, on the other hand, that even though the spending setoff provisions of R.C. 5747.502 are constitutional, the state was enjoined from enforcing R.C. 5747.502 through August 29, 2022, and the state cannot retroactively enforce R.C. 5747.502 dating back to that timeframe. Toledo also argued that even if R.C. 5703.38 bars injunctive relief, Toledo is nonetheless entitled to a judgment declaring the state is wrongfully withholding Toledo's share of local government funds.

{¶ 11} In an October 3, 2025 decision and judgment entry, the trial court granted the state's motion for summary judgment and denied Toledo's motion for summary judgment. The trial court determined R.C. 5703.38 removed the trial court's subject-matter jurisdiction to issue orders that would adjust the spending setoffs of the Department of Taxation pursuant to R.C. 5747.502. Despite Toledo's attempt to frame the issue as a

constitutional matter, the trial court determined it lacked subject-matter jurisdiction over Toledo's request for "monetary relief that unquestionably is at the heart of the dispute." (Oct. 3, 2025 Decision and Jgmt. Entry at 5.)  Finally, the trial court determined granting Toledo's request for declaratory judgment would result in an advisory opinion because it would not settle the legal rights of the parties given the trial court's lack of jurisdiction to issue orders granting any financial relief.  Thus, the trial court entered final judgment in favor of the state.  Toledo timely appeals.

## II.  Assignments of Error

{¶ 12} Toledo raises the following seven assignments of error for our review:

> [I.] The Trial Court erred in concluding that R.C. 5703.38 deprives Courts of Common Pleas of subject matter jurisdiction to hear the City of Toledo's action seeking recovery of local government funds withheld by the State during the period when a valid injunction barred enforcement of the spending setoff provisions of House Bill 62.
>
> [II.] The Trial Court erred in misinterpreting R.C. 5703.38 by treating it as an absolute jurisdictional bar rather than as a limitation solely on injunctive relief against tax determinations.
>
> [III.] The Trial Court erred in failing to harmonize R.C. 5703.38 with R.C. 2723.01 which expressly grants Courts of Common Pleas jurisdiction to enjoin illegal tax levies or collections and to entertain actions to recover illegally collected taxes.
>
> [IV.] The Trial Court erred in disregarding the statutory exception in R.C. 5703.38 preserving "any right or defense in any action to collect any tax or penalty," which applies to the City's claim for recovery of funds withheld during the injunction period.
>
> [V.] The Trial Court erred in concluding it lacked jurisdiction to issue a declaratory judgment regarding the City's rights during the injunction period.
>
> [VI.] The Trial Court erred by failing to hold that the State's use of R.C. 5703.38 was barred by the doctrine of *res judicata*.
>
> [VII.] The Trial Court erred in failing to recognize that constitutional principles requiring respect for injunctions until

vacated override statutory limitations on jurisdiction, thereby requiring the Court to exercise jurisdiction to enforce the injunction's legal effect.

## III. Standard of Review

{¶ 13} An appellate court reviews a trial court's grant of summary judgment under a de novo standard. *Estate of Sample v. Xenos Christian Fellowship, Inc.*, 2021-Ohio-3898, ¶ 9 (10th Dist.). "[D]e novo appellate review means that the court of appeals independently reviews the record and affords no deference to the trial court's decision." (Internal quotations and citations omitted.) *Holt v. State*, 2010-Ohio-6529, ¶ 9 (10th Dist.). Summary judgment is appropriate only when the moving party demonstrates: (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 14} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the summary judgment motion and of identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-93 (1996). The moving party cannot discharge its initial burden with a conclusory assertion that the nonmoving party has no evidence to prove its case; the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating the nonmoving party has no evidence to support the nonmoving party's claims. *Id.*; *Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997). If the moving party fails to satisfy its initial burden, the court must deny the motion for summary judgment. *Dresher* at 293. Where the moving party satisfies the initial burden, summary judgment is appropriate unless the nonmoving party responds, by affidavit or otherwise, as provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial. *Id.*; *Hall v. Ohio State Univ. College of Humanities*, 2012-Ohio-5036, ¶ 12 (10th Dist.); Civ.R. 56(E).

## IV. First, Second, Third, and Fourth Assignments of Error—R.C. 5703.38

{¶ 15} Toledo's first, second, third, and fourth assignments of error are interrelated, and we address them jointly. In its first assignment of error, Toledo argues the trial court erred in finding R.C. 5703.38 deprived it of jurisdiction to consider Toledo's claims when the claims relate to a period of time when a valid injunction was in place. In its second assignment of error, Toledo argues the trial court erred in its interpretation of the scope of R.C. 5703.38. In its third assignment of error, Toledo argues the trial court erred in failing to reconcile R.C. 5703.38 with R.C. 2723.01. And in its fourth assignment of error, Toledo argues the trial court erred in failing to apply the statutory exception in R.C. 5703.38 to its claim for relief. Taken together, these four assignments of error assert the trial court erroneously interpreted and applied R.C. 5703.38 to conclude it lacked jurisdiction to issue the requested relief.

{¶ 16} The construction of a statute presents a question of law that this court reviews de novo. *Madyda v. Ohio Dept. of Pub. Safety*, 2024-Ohio-3201, ¶ 17 (10th Dist.), quoting *New York Frozen Foods, Inc. v. Bedford Hts. Income Tax Bd. of Rev.*, 2016-Ohio-7582, ¶ 8. A court's duty is to give effect to the words used in a statute, not to delete or insert words. *See, e.g.*, *Ayers v. Cleveland*, 2020-Ohio-1047, ¶ 17; *State v. Jordan*, 89 Ohio St.3d 488, 491 (2000) ("[T]he cornerstone of statutory construction and interpretation is legislative intention."). "In order to determine legislative intent it is a cardinal rule of statutory construction that a court must first look to the language of the statute itself." *Jordan* at 492. When the text of the statute in question is plain and unambiguous, we must give effect to the legislature's intent simply by applying the law as written. *State v. Kreischer*, 2006-Ohio-2706, ¶ 12; *State v. Hairston*, 2004-Ohio-969, ¶ 13, citing *Sears v. Weimer*, 143 Ohio St. 312 (1944), paragraph five of the syllabus. "Only when a definitive meaning proves elusive should rules for construing ambiguous language be employed. Otherwise, allegations of ambiguity become self-fulfilling." *State v. Porterfield*, 2005-Ohio-3095, ¶ 11. *See also Hairston* at ¶ 11.

{¶ 17} R.C. 5703.38 provides:

> No injunction shall issue suspending or staying any order, determination, or direction of the department of taxation, or any action of the treasurer of state or attorney general required

by law to be taken in pursuance of any such order, determination, or direction. This section does not affect any right or defense in any action to collect any tax or penalty.

**{¶ 18}** As we have previously explained, "R.C. 5703.38 prohibits common pleas courts from issuing any order—injunction or otherwise—that would have the effect of staying or suspending an order or action of the department of taxation." *Dept. of Taxation v. Scalf*, 2023-Ohio-3652, ¶ 12 (10th Dist.), citing *Hakim v. Kosydar*, 49 Ohio St.2d 161, 164-65 (1977) ("the unambiguous language" in the first sentence of R.C. 5703.38 "means what it says"). "In other words, R.C. 5703.38 bars the common pleas court from granting any relief that would suspend or stay any order, determination, or decision of the commissioner of the department of taxation." *Id.* at ¶ 13, citing *Torbet v. Kilgore*, 6 Ohio St.2d 42, 44 (1966).

**{¶ 19}** Toledo agrees with the general premise that R.C. 5703.38 prohibits a common pleas court from issuing an injunction staying or suspending an order of the Department of Taxation. Toledo argues, however, the trial court erroneously applied R.C. 5703.38 here because the statute does not relate to the unique relief Toledo sought. Specifically, Toledo asserts it did not seek a *new* injunction against current determinations of the Department of Taxation, a situation Toledo concedes would be barred by R.C. 5703.38. Instead, Toledo asserts it seeks enforcement of the previously issued injunction in the Lucas County case in effect from July 2019 to August 2022. Thus, Toledo argues, without citation to authority, the injunction it seeks in the instant case is fundamentally distinct from the type of injunctive relief contemplated in R.C. 5703.38. We disagree.

**{¶ 20}** Though Toledo attempts to draw a distinction between a new injunction against current determinations of the tax commissioner and what it deems is mere enforcement of a previously issued injunction, Toledo ignores both the plain language of R.C. 5703.38 and the relief it requested in its complaint. The first sentence of R.C. 5703.38 unequivocally provides, "No injunction shall issue suspending or staying ***any*** order, determination, or direction of the department of taxation." (Emphasis added.) Toledo's complaint specifically requested preliminary and permanent injunctions "prohibiting the [state] from enforcing the provisions [of] R.C. 5747.502 or reducing [Toledo's] local government funds." (Compl. at 8.) Despite Toledo's attempt on appeal to frame its request

for relief as requesting enforcement of a prior injunction, Toledo's complaint requested the issuance of a new injunction in order to accomplish this stated goal. Given the breadth of R.C. 5703.38 prohibiting the common pleas court from issuing an injunction against ***any*** order of the tax commissioner, Toledo's requested relief of an injunction prohibiting the enforcement of R.C. 5747.502 is plainly outside the authority of the common pleas court. Toledo also requests an order that the state restore to Toledo "all local government fund distributions that have been illegally withheld in violation of Court orders." (Compl. at 8.) However, such an order would have the effect of staying or suspending an order of the Department of Taxation and, therefore, is barred by R.C. 5703.38. *Scalf* at ¶ 12. Simply stated, R.C. 5703.38 bars the common pleas court from issuing any order that would have the effect of staying or suspending an order of the tax commissioner and does not create an exception for cases that relate to prior orders of the tax commissioner.

{¶ 21} In an effort to circumvent the trial court's disposition of the case on the basis of lack of subject-matter jurisdiction, Toledo argues R.C. 5703.38 is not a categorical bar on the trial court's subject-matter jurisdiction but is a mere limitation on the type of relief the court may grant. Reiterating that it seeks relief related to the time period the injunction from the Lucas County case was in effect, Toledo asserts the trial court retained jurisdiction to consider its claim for relief because it dates back to a specific, finite time period. Again, we emphasize the plain language of the statute does not provide for disparate application depending on the timeframe for which a plaintiff seeks injunctive relief. Moreover, Toledo's argument ignores the general principle that "[w]hen a court has been granted general subject-matter jurisdiction to hear a class of case, that court may still lack jurisdiction over a particular case if that jurisdiction is explicitly removed by, for example, another statute." *State ex rel. T.B. v. Brown*, 2025-Ohio-4484, ¶ 24. The Supreme Court has determined the limitation on the general authority of common pleas courts contained in R.C. 5703.38 is a limitation on trial court jurisdiction. *Hakim*, 49 Ohio St.2d at 165, fn. 2; *State ex rel. Tax Comm. v. Faust*, 113 Ohio St. 365, 368 (1925). We are not persuaded by Toledo's argument that the unique facts of this case somehow operate to restore subject-matter jurisdiction to the common pleas court where the General Assembly has expressly acted to remove it.

{¶ 22} Still, Toledo asserts the trial court erred in concluding it lacked subject-matter jurisdiction because it failed to harmonize R.C. 5703.38 with R.C. 2723.01. We

reject this argument. R.C. 2723.01 is the general grant of jurisdiction to common pleas courts to "enjoin the illegal levy or collection of taxes and assessments." In *Torbet*, the Supreme Court specifically held "[t]he specific provisions against an injunction in [R.C. 5703.38] limit the general authority of the Common Pleas Court, that is provided for in [R.C. 2723.01], to render an injunction against an illegal levy or collection of taxes and assessments." *Torbet*, 6 Ohio St.2d 42 at paragraph three of the syllabus. The trial court cited and relied on *Torbet* in concluding it lacked subject-matter jurisdiction. Thus, we do not agree with Toledo that the trial court failed to harmonize the specific statute with the more general statute. *See also State ex rel. Dublin Secs. v. Ohio Div. of Secs.*, 68 Ohio St.3d 426, 429 (1994) ("It is a well-settled principle of statutory construction that when two statutes, one general and the other special, cover the same subject matter, the special provision is to be construed as an exception to the general statute which might otherwise apply.").

{¶ 23} Toledo acknowledges *Torbet* but argues it does not apply because the injunction from the Lucas County case was based on "the declared unconstitutionality" of the spending setoff provision of R.C. 5747.502. (Appellant's Brief at 19.) Because of that "declared unconstitutionality," Toledo asserts the application of the spending setoff to the timeframe the injunction from the Lucas County case was in effect amounts to "the collection of an illegal tax" under R.C. 2723.01. (Emphasis omitted.) (Appellant's Brief at 19.) Toledo's argument is based on a flawed premise: the spending setoff provision is neither "illegal" nor is it a "tax."

{¶ 24} Though the constitutionality of the spending setoff in R.C. 5747.502 was the question underlying the initial injunction in the Lucas County case, the Supreme Court unequivocally found the spending setoff to be constitutional in *Newburgh Heights*, 2022-Ohio-1642, at ¶ 35, leading to the trial court vacating the injunction in the Lucas County case. The Supreme Court concluded the spending setoff in R.C. 5747.502 is a proper exercise of the General Assembly's discretionary spending power. *Id.* ("The Ohio Constitution grants the General Assembly the spending power, and the spending setoff enacted by R.C. 5747.502 falls squarely within the authority to establish priorities in deciding the amount of funding to provide for municipalities."). Therefore, there is no longer any dispute that the spending setoff—which is not a tax, but a discretionary function

of the legislature to direct spending—is constitutional and, thus, it is not "illegal." And R.C. 5703.38 clearly prohibits Toledo from seeking a *new* order enjoining an action of the tax commissioner even if Toledo's purported purpose of that new order is to relate back to the time period of the prior injunction.

{¶ 25} For similar reasons, we reject Toledo's argument that the second sentence of R.C. 5703.38 "directly applies" to these facts to confer subject-matter jurisdiction to the trial court. That sentence provides, "This section does not affect any right or defense in any action to collect any tax or penalty." As we explained above, the state's enforcement of the spending setoff provision is not a tax but is a proper exercise of the legislature's discretionary spending power. *See Newburgh Hts.* at ¶ 35. Additionally, Toledo's reading of the spending setoff as punitive in nature does not render the spending setoff provision a "penalty" within the meaning of R.C. 5703.38. We are mindful that, beyond a few specific provisions requiring redistribution of certain taxes to municipalities, none of which are relevant here, "the Ohio Constitution does not create a general duty for the legislature to fund the operations of municipal corporations." *Newburgh Hts.* at ¶ 22. Though Toledo disagrees with the manner in which the legislature has chosen to exercise its discretionary spending authority, that disagreement is not enough to qualify its action for injunctive relief as a "defense in any action to collect any tax or penalty." R.C. 5703.38. Toledo's action is not a defense to the state's collection of a tax or penalty and, therefore, does not fall within the second sentence of R.C. 5703.38.

{¶ 26} Accordingly, we agree with the trial court that R.C. 5703.38 removed its subject-matter jurisdiction to consider Toledo's claims. We overrule Toledo's first, second, third, and fourth assignments of error.

## V. Fifth Assignment of Error—Declaratory Judgment

{¶ 27} In its fifth assignment of error, Toledo argues the trial court erred in concluding it lacked jurisdiction to consider Toledo's claim for declaratory judgment. Toledo asserts that even if the jurisdictional limitation in R.C. 5703.38 applies to this case, it applies only to its claims for injunctive relief, not its claim for declaratory judgment.

{¶ 28} We agree with Toledo that R.C. 5703.38 applies to injunctive relief and does not expressly mention declaratory judgment. However, as we explained in our resolution

of Toledo's first four assignments of error, the Supreme Court has broadly construed R.C. 5703.38 to prohibit the common pleas courts from issuing ***any order that has the effect*** of staying or suspending an action or order of the Department of Taxation. *Scalf*, 2023-Ohio-3652, at ¶ 12 (10th Dist.), citing *Hakim*, 49 Ohio St.2d at 164-65. And, as we have previously held, under R.C. 5703.38, a declaratory judgment cannot be used "to achieve indirectly what [the plaintiff] could not achieve directly." *Kinninger v. Tracy*, 1992 Ohio App. LEXIS 6793, *7 (10th Dist. Dec. 31, 1992) (finding R.C. 5703.38 barred the plaintiffs' claims for both injunctive relief against the collection of a specific tax and a declaratory judgment that the tax was illegal).

{¶ 29} Here, Toledo sought a declaratory judgment declaring (1) "the enforcement of R.C. 5747.502 during the period its enforcement by the State of Ohio was enjoined was unconstitutional, or otherwise invalid," and (2) "the reduction of [Toledo's] local government fund distribution by the State of Ohio to be unlawful." (Compl. at 7-8.) Despite captioning its claim for relief as one for declaratory judgment, the underlying purpose of Toledo's requested declaration is to stay or suspend the tax commissioner's enforcement of the spending setoff provision of R.C. 5747.502. As in *Kinninger*, Toledo's request for declaratory judgment is an attempt to indirectly achieve the same outcome it requested through its claim for injunctive relief. Because R.C. 5703.38 deprives the common pleas court of subject-matter jurisdiction to issue any order—injunction or otherwise—that has the effect of staying or suspending an order of the Department of Taxation, the trial court did not err in concluding it lacked subject-matter jurisdiction over Toledo's claim for declaratory judgment. *Scalf* at ¶ 12. We therefore overrule Toledo's fifth assignment of error.

## VI. Sixth Assignment of Error—Res Judicata

{¶ 30} In its sixth assignment of error, Toledo argues the trial court erred in granting the state's motion for summary judgment because res judicata bars the state's reliance on R.C. 5703.38. Toledo asserts the state failed to raise R.C. 5703.38 in the Lucas County case and, therefore, is not permitted to rely on R.C. 5703.38 in the instant litigation.

{¶ 31} " 'Res judicata bars the litigation of all claims that either were or might have been litigated in a first lawsuit.' " *State ex rel. Woods v. Jenkins*, 2024-Ohio-1753, ¶ 7,

quoting *Hughes v. Calabrese*, 2002-Ohio-2217, ¶ 12. Though the state did not raise R.C. 5703.38 in the Lucas County case, res judicata does not operate to bar the state from doing so in this case because R.C. 5703.38 concerns the trial court's subject-matter jurisdiction.

{¶ 32} Subject-matter jurisdiction refers to a court's power to entertain and adjudicate a particular class of cases on the merits. *Bank of Am., N.A. v. Kuchta*, 2014-Ohio-4275, ¶ 19, citing *Morrison v. Steiner*, 32 Ohio St.2d 86, 87 (1972). "Subject-matter jurisdiction cannot be waived and may be raised at any time." *Hulbert v. Buehrer*, 2017-Ohio-844, ¶ 11 (10th Dist.), citing *Rosen v. Celebrezze*, 2008-Ohio-853, ¶ 45, quoting *Pratts v. Hurley*, 2004-Ohio-1980, ¶ 11 (" 'Because subject-matter jurisdiction goes to the power of the court to adjudicate the merits of a case, it can never be waived and may be challenged at any time.' "). Res judicata does not preclude a court from considering a lack of subject-matter jurisdiction unless the question of subject-matter jurisdiction has previously been fully litigated. *Dunlop v. Ohio Dept. of Job & Family Servs.*, 2019-Ohio-3632, ¶ 11-12 (10th Dist.), citing *Bakhtiar v. Saghafi*, 2018-Ohio-3796, ¶ 21 (8th Dist.) ("[t]he bar of res judicata does not apply where the prior action was void for lack of subject matter jurisdiction"), *discretionary appeal not allowed by* 2019-Ohio-173; *In re A.R.*, 2017-Ohio-1575, ¶ 10 (10th Dist.) ("[r]es judicata applies to bar relitigation of the issue of subject-matter jurisdiction"). The question of the trial court's subject-matter jurisdiction was not raised, and thus not fully litigated, in the Lucas County case. Therefore, res judicata does not bar the state from raising the jurisdictional limitation of R.C. 5703.38 in the instant case. We overrule Toledo's sixth assignment of error.

## VII. Seventh Assignment of Error—Constitutional Preemption of Statutory Jurisdictional Limitations

{¶ 33} In its seventh and final assignment of error, Toledo argues the trial court erred in deferring to statutory limits on its subject-matter jurisdiction rather than recognizing "constitutional principles requiring respect for injunctions until vacated." (Appellant's Brief at 1.) As the state notes, though Toledo assigned the trial court's adherence to the statutory limits of its subject-matter jurisdiction as error, Toledo failed to separately argue this assignment of error in its brief. App.R. 16(A)(7) requires an appellant's brief to include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the

contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." This court "may disregard an assignment of error presented for review if the party raising it . . . fails to argue the assignment separately in the brief, as required under App.R. 16(A)." App.R. 12(A)(2). *See also Lundeen v. State Med. Bd. of Ohio*, 2013-Ohio-112, ¶ 16, 18 (10th Dist.). Because Toledo failed to argue this assignment of error separately in its brief, we overrule its seventh and final assignment of error.

## VIII. Trial Court's Erroneous Judgment on the Merits

{¶ 34} We agree with the state that the trial court did not err in concluding it lacked subject-matter jurisdiction over Toledo's claims. As Toledo notes, however, after granting the state's motion for summary judgment based on lack of subject-matter jurisdiction, the trial court purported to enter final judgment for the state "on the merits." (Decision and Jgmt. Entry at 5.) "Where a court lacks subject-matter jurisdiction, it must announce its lack of jurisdiction and dismiss the matter; any other proclamation by a court lacking subject-matter jurisdiction is void." *Hulbert*, 2017-Ohio-844, at ¶ 12 (10th Dist.), citing *Pratts*, 2004-Ohio-1980, at ¶ 11, quoting *State ex rel. Jones v. Suster*, 84 Ohio St.3d 70, 75 (1998), citing *Scudere v. France*, 2009-Ohio-6989, ¶ 6 (10th Dist.). Accordingly, we modify the decision and judgment entry of the trial court to reflect the matter is dismissed rather than resolved on its merits. Ohio Constitution, Article IV, Section 3(B)(2) (courts of appeals are granted jurisdiction to "review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district"); R.C. 2501.02(C) (appellate courts may "review, affirm, modify, set aside, or reverse judgments or final orders of courts of record inferior to the court of appeals within the district").

## IX. Disposition

{¶ 35} Based on the foregoing reasons, we conclude the trial court did not err in determining R.C. 5703.38 removed its subject-matter jurisdiction to consider Toledo's claims. However, though the trial court correctly determined it lacked subject-matter jurisdiction over the matter, the trial court erroneously entered judgment "on the merits" rather than dismissing the action. Thus, we modify the trial court's decision and judgment entry to reflect the matter is dismissed for lack of subject-matter jurisdiction. Having

overruled Toledo's seven assignments of error, we affirm the decision and judgment entry of the Franklin County Court of Common Pleas as modified.

*Judgment affirmed as modified.*

BEATTY BLUNT and DINGUS, JJ., concur.

————————————